UNITED STATES of America, Appellee,

v.

Arthur PLOTKIN, Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Dominic SERINO, Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

John CONSIDINE et al., Defendants, Appellants.

UNITED STATES of America, Appellee,

v.

Julius SILVERMAN, Defendant, Appellant.

Nos. 76–1012 to 76–1015.

United States Court of Appeals, First Circuit.

Argued Sept. 10, 1976.

Decided March 4, 1977.

Henry D. Katz, Boston, Mass., with whom Francis J. DiMento, Boston, Mass., Max C. Goldberg, Goldberg & Hass, Malden, Mass., Paul Redmond, and S. James Alberino, Boston, Mass., were on brief, for appellants.

Frederick Eisenbud, Atty., Dept. of Justice, WAshington, D. C., with whom James N. Gabriel, U. S. Atty., Boston, Mass., Joseph S. Davies, Atty., Dept. of Justice, Washington, D. C., and Stephen H. Jigger, Sp. Atty., Dept. of Justice, Boston, Mass., were on brief, for appellee.

Before CLARK,* Associate Justice, U.S. Supreme Court (Ret.), McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

After a jury trial, appellants were convicted of operating an illegal gambling business in violation of 18 U.S.C. § 1955. This appeal turns on the legality of a wiretap instituted under the Omnibus Crime Control and Safe Streets Act of 1968, *viz.* 18 U.S.C. § 2518.

Appellants assert that the affidavit supporting the issuance of the wiretap order in this case was fatally tainted by a prior (admittedly illegal) wiretap; that the wiretap instituted pursuant to the order was therefore illegal; and that the evidence ultimately seized as a direct result of the wiretap was consequently the "fruit of the poisonous tree." Appellants argue that the trial judge therefore erred in refusing to

* Sitting by designation.

suppress any of the evidence resulting from the wiretap.

■ At the outset we note that all of the appellants are challenging the admission of the evidence on the ground that it is the fruit of an illegal wiretap which intercepted conversations of appellant Serino. None of the other appellants were allegedly overheard during any other illegal wiretap. Only appellant Serino therefore has standing to assert a violation of his Fourth Amendment rights in seeking to suppress the evidence. *United States v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *Alderman v. United States,* 394 U.S. 165, 174–76, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); *Jones v. United States,* 362 U.S. 257, 261, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *United States v. Scasino,* 513 F.2d 47, 51 (5th Cir. 1975). Appellants also seek to assert on appeal the government's alleged failure to comply with the wiretapping safeguards of the 1968 Act, *see* 18 U.S.C. § 2518(1)(e), as a basis for suppressing the fruits of the wiretap. We need not decide, however, whether the government did violate the 1968 Act or whether all appellants have standing to raise this issue. It was not raised below, *see* 18 U.S.C. § 2518(10)(a), and was therefore waived. Fed.R.Crim.P. 12(b)(2). Since the appellants other than Serino pose no issues cognizable on appeal we affirm their convictions and proceed to consider the merits of appellant Serino's challenge to the trial judge's refusal to suppress the evidence.[1]

The affidavit supporting the wiretap in this case was filed by FBI Special Agent Lucksted. In one portion of his affidavit, Agent Lucksted quoted extensively from a recorded telephone conversation which the FBI had intercepted during what is now conceded to have been an illegal wiretap operation. In that conversation, a person at the tapped phone telephoned one of the numbers for which the wiretap was to be sought in this case. There followed an extended conversation which unmistakably showed that both telephones were being used in furtherance of illegal bookmaking. After the wiretap order in the present case was issued, it was disclosed that appellant Serino was the recipient of the call overheard during this interception, and that the FBI had overheard over one hundred of his conversations during the time of the illegal wiretap.

If the wiretap order in the present case had been issued solely on the basis of the illegally intercepted conversation quoted in the Lucksted affidavit, we have no doubt that the wiretap which it supported and the evidentiary fruits thereof could play no part in the conviction of Serino. However, Agent Lucksted's affidavit did not rest solely on this illegally overheard conversation. Lucksted stated in another portion of the affidavit that a confidential informant, known to him over a long period of time to be reliable, had provided him with certain information. The informant reportedly had told Lucksted that he was in the gambling business and that he had placed bets on a

---

1. Appellants also assert that if appellant Serino is successful in his challenge to the sufficiency of the affidavit supporting the wiretap order in this case, the affidavit will name only four instead of five participants in the illegal gambling operation described in the affidavit. According to this argument, a business with only four participants would not meet the jurisdictional standards of 18 U.S.C. § 1955(b)(1)(ii). The wiretap order, therefore, would have no jurisdictional basis and could be challenged by appellants. This argument fails primarily because appellants do not have standing to raise a violation of Serino's Fourth Amendment rights and may not assert that the affidavit improperly included him as an alleged participant in the gambling operation. Furthermore,

the affidavit claimed that other, unnamed persons were engaged in accepting "laid-off" bets from the operation in question. (Laid-off bets are long odds and other wagers which a bookmaker places with another bookmaker to distribute his risks. See *United States v. DiMuro,* 540 F.2d 503, 507 n. 4 (1st Cir. 1976), *cert. denied,* —— U.S. ——, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977).) The persons accepting "laid-off" bets are persons involved in a single "illegal gambling business" within the meaning of 18 U.S.C. § 1955. *United States v. DiMuro, supra,* 540 F.2d at 508. Hence the operation described in the affidavit had five or more participants even if appellant Serino is not included in their number.

large number of occasions by telephoning the numbers sought to be wiretapped. The informant also allegedly stated that, through conversations with four named individuals, including appellant Serino, he had learned that they were part of a single gambling enterprise. The informant also reported that this enterprise "laid off" bets to other bookmakers in Massachusetts.[2] This informant's statements alleged the existence of a gambling operation of sufficient size to violate 18 U.S.C. § 1955. Since the informant was shown to have been reliable on previous occasions and since the information was sufficiently detailed to provide a substantial basis for weighing its credibility, Lucksted's statements in this portion of the affidavit, standing alone, would justify a finding of probable cause for the issuance of an intercept order. *United States v. DiMuro*, 540 F.2d 503, 519 (1st Cir. 1976), *cert. denied*, —— U.S. ——, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977). And if this information was untainted by the prior, illegal wiretap, this portion of Lucksted's affidavit would justify the wiretap order despite the inclusion of tainted information in the same affidavit:

> "The ultimate inquiry on a motion to suppress evidence seized pursuant to a warrant is not whether the underlying affidavit contained allegations based on illegally obtained evidence, but whether, putting aside all tainted allegations, the independent and lawful information stated in the affidavit suffices to show probable cause." *United States v. DiMuro, supra, quoting United States v. Giordano*, 416 U.S. 505, 555, 94 S.Ct. 1820, 1845, 40

L.Ed.2d 341 (1974) (Powell, J., concurring in part and dissenting in part).

In separate portions of his affidavit, Lucksted also included allegations based on the statements of two other confidential informants. While both informants were allegedly personally known to Lucksted to have provided substantial amounts of reliable information in the past, he had not directly received their information in this case. Rather, both informants had spoken with other agents who relayed their information to Lucksted. One informant had told an agent that he was in the gambling business, had placed numerous bets by phoning the numbers sought to be wiretapped, and that while placing bets he had spoken with someone claiming to be appellant Serino at other telephone numbers. This informant identified only three named participants in the alleged gambling business.

■ The other informant, also assertedly involved in illegal gambling, had stated that he had placed numerous bets by phoning the numbers sought to be wiretapped and that he had been informed by several alleged bookmakers that they were part of the same operation. This informant identified three named, alleged participants in the illegal bookmaking business, only one of whom had not been identified by the previous informer. Both informers, together, therefore, identified four participants in the alleged gambling enterprise. When read together with the evidence provided by the first informant, these informants' statements are cumulative in showing a violation of § 1955.[3]

---

2. See note 1, *supra*.

3. Also cumulative is an assertion contained in the paragraph of the Lucksted affidavit which quotes extensively from the illegal wiretap of appellant Serino. After setting forth the wiretap transcript and stating that the address at which Serino had been speaking from when intercepted was 63 Lancaster Avenue, Revere, Lucksted stated that agents "entered the basement apartment at 63 Lancaster Avenue . . where they interviewed DOMINIC SERINO. At the time these Agents entered, they observed DOMINIC SERINO seated at a desk containing two telephones, marked Arm-

strong's, betting slips and other evidence of gambling."

The very location of this assertion in the affidavit creates, we think, a presumption that the Serino interview referred to was the fruit of the illegal wiretap. If the observations of the agents at the interview are to contribute to the sufficiency of the affidavit, then the burden is on the government to show on remand that the interview was initiated independently of any information obtained from the illegal wiretap. *See Alderman v. United States*, 394 U.S. 165, 183, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); *Nar-*

Appellant Serino claims in this appeal that the informants' allegations are insufficient to establish probable cause for the wiretap order because the government did not carry its burden below of showing that the informants' information was derived independently of the illegal wiretap which tainted other portions of the affidavit. In making this argument, appellant relies on the following language from *Nardone v. United States*, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939):

> "The burden is, of course, on the accused in the first instance to prove to the trial court's satisfaction that wire-tapping was unlawfully employed. Once that is established—as was plainly done here—the trial judge must give opportunity, however closely confined, to the accused to prove that a substantial portion of the case against him was a fruit of the poisonous tree. This leaves ample opportunity to the Government to convince the trial court that its proof had an independent origin." 308 U.S. at 341, 60 S.Ct. at 268.

Appellant's argument is that he has indisputably shown that "wire-tapping was unlawfully employed." And, since the Lucksted affidavit rested in part on the fruits of illegal wiretapping, appellant maintains that he has proved that "a substantial portion of the case against him was a fruit of the poisonous tree." Under *Nardone*, he argues, the burden then shifts to the government to show "that its proof had an independent origin," a burden assertedly not met here.

■ We agree that the language from *Nardone*, quoted *supra*, is somewhat ambiguous and might be read to mean that a showing that wiretap evidence, relied on in an affidavit, was illegally obtained would create a presumption that all other evidence relied on was thus tainted. However, our understanding of *Nardone's* applicability to these facts is somewhat different. Before the burden shifted to the government, we

think that appellant had to make a preliminary showing that the illegal wiretapping, otherwise to be ignored under *United States v. DiMuro, supra*, at 515, had infected the informants' reports. In *Nardone* wiretap evidence had similarly been excluded and the question to be resolved was whether the other evidence in the case had been derived from the poisonous tree. The Supreme Court ruled that evidence stemming from the wiretap could be excluded but that the burden was preliminarily on the defendant to show taint. 308 U.S. at 341, 60 S.Ct. 266. By analogy, the burden in this case is on appellant to show some taint infecting the informants' reports before the burden shifts to the government to prove that the information was independently developed. Appellant has not made such a preliminary showing. The illegal wiretapping, as it affects this case, was not so pervasive as to suggest that all of the government's informants and leads likely flowed from the interceptions. *Compare United States v. Magaddino*, 496 F.2d 455, 460–61 (2d Cir. 1974). Nor was Serino or any other appellant during the hearing on the motion to suppress able to undermine the assertions of Lucksted and other FBI agents that their informants were independently developed.

■ Appellant next argues that if the burden was on him to show a causal relationship between the wiretap and the informants' reports, the district judge erred in refusing to order the FBI to produce the transcripts of the over one hundred telephone calls involving appellant Serino which had been illegally intercepted. Appellant sought the transcripts as a possible source of evidence that the informants' reports were the fruit of the illegal wiretap.

In *Alderman v. United States, supra*, the Supreme Court was faced with the issue of whether the government should be compelled to disclose wiretap transcripts to a

done v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307 (1939). Whether tainted or not, the interview observations are of such marginal significance to the sufficiency of

the affidavit that we doubt that the resolution of this question will have any effect on appellant's motion to suppress.

**698**

defendant who sought to meet his *Nardone* burden of showing that the evidence upon which the United States relied had been tainted by the illegal interceptions. The Court ruled:

> "With this task ahead of them, and if the hearings [on suppression of evidence] are to be more than a formality and petitioners not left entirely to reliance on government testimony, there should be turned over to them the records of those overheard conversations which the Government was not entitled to use in building its case against them." 394 U.S. at 183, 89 S.Ct. at 972.

*Alderman* controls this case, we think, and we conclude that the district judge therefore erred in denying Serino's request for production of the wiretap transcripts of his conversations. The case must therefore be remanded to the district court for a fresh determination of whether the illegal wiretaps so infected the other evidence set forth in the Lucksted affidavit that no independent basis for finding probable cause existed.[4] *See Alderman, supra,* at 184–87, 89 S.Ct. 961.

*The judgments in Nos. 76–1012, 76–1014 and 76–1015 are affirmed. The judgment in No. 76–1013 is vacated and remanded for proceedings consistent with this opinion.*

---

4. Appellant also raises one issue which we find unnecessary to decide at this juncture. Serino asserts that the district judge erred in refusing to require the government to produce an FBI agent who informed Lucksted of one of the informant's assertions that he had phoned the numbers sought to be wiretapped on numerous occasions and had placed bets. This same informant also allegedly called Serino on different numbers to place bets and was informed by the person identifying himself as Serino that he was involved with two other defendants in the illegal gambling business. The government refused to supply the agent allegedly because to reveal his identity would automatically reveal the identity of the informant.

The quantum of evidence supplied by this informant was substantially less than that provided by the other two informants and relied upon by Lucksted. It is likely therefore that the affidavit will stand or fall on remand irrespective of how this issue is decided. In this respect, if the evidence supplied by the informant who reported directly to Lucksted is found untainted, sufficient evidence will exist independent of the wiretap for the affidavit to have shown probable cause. On the other hand the evidence supplied by the undisclosed agent and his informant will not alone support a finding of probable cause.

We think it desirable also to leave this question in the first instance to the discretion of the district judge who will deal with it anew in what may be radically altered factual setting. For example, if appellant is able to develop a plausible showing of taint after disclosure of the transcripts, it may be desirable to require more extensive exploration of the informants' independence. On the other hand, if disclosure leads to no new evidence of taint, compelling disclosure of the agent's identity might clearly be irrelevant to the outcome of the motion to suppress.