UNITED STATES of America, Appellee,

v.

Raymond BAILLEUL, Defendant-Appellant.

UNITED STATES of America, Appellee,

v.

Kenneth MOCCIO, Defendant-Appellant.

UNITED STATES of America, Appellee,

v.

James NOFTALL, Defendant-Appellant.

Nos. 76–1126 to 76–1128.

United States Court of Appeals, First Circuit.

Argued March 7, 1977.

Decided April 29, 1977.

David A. Mills, Danvers, Mass., with whom Walter J. Hurley, Boston, Mass., was on brief, for Raymond Bailleul and James Noftall, appellants.

Michael O. Jennings, Springfield, Mass., with whom George W. Leary, Springfield, Mass., was on brief, for Kenneth Moccio, appellant.

George F. Kelly, U. S. Dept. of Justice, Washington, D. C., with whom James N. Gabriel, U. S. Atty., Boston, Mass., and Gerald E. McDowell, U. S. Dept. of Justice, Washington, D. C., were on briefs, for appellee.

Before MOORE,* ALDRICH and CAMPBELL, Circuit Judges.

* Leonard P. Moore, United States Circuit Judge for the Second Circuit, sitting by designation.

1. In addition to the ten named defendants, thirteen individuals were named in the indictment as unindicted co-conspirators. On the first day of trial, six of the defendants entered guilty pleas which were accepted by the court. The remaining four defendants proceeded to trial.

MOORE, Circuit Judge:

Raymond Bailleul and James Noftall appeal their judgments of conviction of conspiracy to operate, and the operation of, a professional gambling ring in violation of 18 U.S.C. §§ 1955 and 2. Kenneth Moccio appeals his conviction of conspiracy to violate the same statute. The convictions of all three men, entered in the District Court for the District of Massachusetts, resulted from the exposure and dissolution of the same large-scale gambling business. We affirm all the convictions.

Bailleul, Noftall, and Moccio, along with seven others,[1] were charged on a two-count indictment with conspiracy to violate 18 U.S.C. § 1955 and with a substantive violation of that statute.[2] The charges arose from the defendants' involvement with an extensive betting enterprise headquartered in Springfield, Massachusetts.

The evidence against the defendants at trial consisted primarily of tapes of their telephone conversations between themselves and also with uncharged individuals. The tapes were obtained as a result of court-authorized wiretaps and pen registers. Also, gambling paraphernalia seized in warrant-authorized searches of several gambling premises was admitted. In addition, expert testimony was presented relative to the gambling significance of all the evidence.

After an eight-day trial, a jury found Bailleul and Noftall guilty on both counts; Moccio was found guilty only on the conspiracy count. All three men filed timely appeals from the judgments entered on the verdicts.

I.

■ Appellants Bailleul and Noftall raise only one argument on appeal. It concerns

One of them was acquitted, and the other three are the appellants herein.

2. 18 U.S.C. § 1955 provides in pertinent part: "Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both."

the tapes of intercepted telephone conversations which were entered into evidence beginning on the second day of trial. During the course of the investigation of the Springfield gambling operation, government agents had monitored more than 1,000 conversations on telephones listed to various defendants and co-conspirators in this case. The government selected approximately 245 of the intercepted calls for use at trial. Noftall was a party to approximately 75 of these calls; Bailleul was a party to approximately 15 of them. The statements made over the telephones are replete with the jargon of gambling, and appellants Bailleul and Noftall concede that the calls concern the passing of wagering information or bets.

Bailleul and Noftall contend that the manner of admitting the taped conversations was error. Prior to the playing of the tapes for the jury, no limiting instructions were either requested by any counsel or given by the court. These appellants argue that because these tapes were "extrajudicial declarations of alleged co-conspirators" it was plain error for the trial court not to give, *sua sponte*, a limiting instruction in conformance with this court's opinion in *United States v. Honneus*, 508 F.2d 566 (1st Cir. 1974), *cert. denied*, 421 U.S. 948, 95 S.Ct. 1677, 44 L.Ed.2d 101 (1975).

In *Honneus*, this court commented on the advisability of limiting instructions in cases where hearsay statements by one conspirator affecting other members of the alleged conspiracy are presented to the jury. 508 F.2d at 576–77. The court expressly agreed with *United States v. Apollo*, 476 F.2d 156 (5th Cir. 1973), where it was stressed that there is a

"minimum obligation on the trial judge in a conspiracy case in which extrajudicial statements of alleged co-conspirators are proffered to give a cautionary instruction on the limited uses of hearsay testimony, explaining clearly to the jury the requirement that the conspiracy itself and each defendant's participation in it must be established by independent non-hearsay evidence which must be given either prior

to the introduction of any evidence or immediately upon the first instance of such hearsay testimony." 476 F.2d at 163.

Though this court refused to find plain error in the failure of the trial court to adequately instruct in *Honneus*, it warned that failure to properly limit the introduction of such extrajudicial statements could result in reversal where the omission affected substantial rights. 508 F.2d at 577. Bailleul and Noftall apparently contend that the admission of the tapes at their trial violated this *Honneus* rule.

However, their argument is misplaced. The cases, such as *Honneus* and *Apollo*, which suggest a limiting instruction on the introduction of extrajudicial statements by co-conspirators involve the proffering of statements that have reference in some way to other co-conspirators. Indeed, the need for the instruction arises only from the risk that a defendant might be considered a part of a conspiracy solely on extrajudicial references to him by alleged co-conspirators, without the defendant having been a part of the conversation or present when the statements were made. Here, these appellants have at no time asserted that the taped conversations to which they were not a party referred to them in any way, and a review of the tape transcripts confirms that there were no such references. There could thus be no risk here that either Bailleul or Noftall could be convicted on the mere basis of such declarations. As this court stated in *United States v. Johnson*, 467 F.2d 804, 807 (1st Cir. 1972), *cert. denied*, 410 U.S. 909, 93 S.Ct. 963, 35 L.Ed.2d 270 (1973), this evidence could not possibly have been prejudicial because these appellants were "neither mentioned nor referred to in any manner" in the conversations to which they were not a party.

The convictions of Bailleul and Noftall do not rest at all upon taped references to them by co-conspirators. On the contrary, they are grounded in numerous recordings of each defendant actually committing the crimes charged, physical evidence seized in proper searches, and expert testimony as to

the significance of the evidence. Here, as in *Honneus*, the independent non-hearsay evidence against these two appellants was "adequate by any standard". 508 F.2d at 577. We find no error in the fact that the trial judge did not *sua sponte* give a *Honneus* instruction.

## II.

■ Appellant Moccio also raises only one argument on appeal.[3] He contends that his conviction for conspiracy to violate 18 U.S.C. § 1955 must be reversed because it is supported by insufficient evidence. Specifically, Moccio concedes that there was sufficient evidence before the jury to show that he was a bookmaker operating from his residence in Agawam, Massachusetts. But he argues that insufficient proof has been offered to connect him to the defendants who operated the central gambling ring in Springfield, Massachusetts, to make him guilty of conspiring to violate 18 U.S.C. § 1955.

However, viewing the evidence as a whole and in the light most favorable to the government, *United States v. Doran*, 483 F.2d 369, 372 (1st Cir. 1973), *cert. denied*, 416 U.S. 906, 94 S.Ct. 1612, 40 L.Ed.2d 111 (1974), we are satisfied that the jury could reasonably have found Moccio guilty of conspiracy. Moccio was the recipient of fourteen telephone calls from the Springfield headquarters during the month of December, 1974, most of which took place a few minutes before 7:00 P.M., and all of which concerned the current betting "line". It is not unreasonable to conclude from the informality and substance of the calls that Moccio was considered some type of working associate of the individuals speaking from the Springfield office. In one taped conversation, moreover, that of December 21, 1974, at 7:00 P.M., Moccio expressly exchanged a sport betting line with the Springfield office. This is an activity which this court labeled a "necessary and useful" part of gambling enterprises in *United States v. DiMuro*, 540 F.2d 503, 508 (1st Cir. 1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 733, 51 L.Ed.2d 749 (1977), and which this court considered strongly probative in *United States v. Scibelli*, 549 F.2d 222, at 229 (1st Cir. 1977), *cert. denied*, —— U.S. ——, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977).

Also, the government's gambling expert explained the absence of tapes wherein Moccio himself placed "lay-off" bets with the Springfield office by testifying that Moccio could easily have placed such bets directly through his employer while at work. The expert testified further that the fact that the Springfield office regularly gave Moccio its private betting line, rather than merely the general line from Boston or Springfield, indicated a close and mutually beneficial working relationship between Moccio and the other defendants. Furthermore, some of the gambling records seized at Moccio's residence included betting information and tabulations written on paper with the letterhead of a defendant who allegedly had helped to operate the Springfield office. While the issue is not without some doubt, we conclude that the evidence before the jury, and the reasonable inferences therefrom, are enough to support the verdict of guilty of conspiracy. *See United States v. Scibelli, supra,* at 228–230.

*All convictions affirmed.*

---

3. Moccio's counsel had contended in his brief that the district court erred in refusing to suppress the tapes gotten from the government's wiretaps due to defects in the affidavits underlying the wiretap requests. However, at oral argument he abandoned this contention in light of our recent decision in *United States v. Scibelli*, 549 F.2d 222 (1st Cir. 1977), *cert. denied*, —— U.S. ——, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977). *See also United States v. Plotkin*, 550 F.2d 693 (1st Cir. 1977).