UNITED STATES of America,

v.

Richard Ernest GAMBALE, James Peter Limone, Jr., Ralph Lamattina, John Carmen Cincotti, Jason Brion Angiulo, John Louis Orlandella, and William Joseph Kazonis, Defendants.

Crim. No. 84–293–K.

United States District Court,
D. Massachusetts.

June 12, 1985.

**1520**

Barry M. Haight, Buckley, Haight, Muldoon, Milton, Mass., for Gambale.

Richard Egbert, Boston, Mass., for Limone.

Willie Davis, Boston, Mass., for Cincotti.

John Voorhees, Boston, Mass., for U.S.

Memorandum and Order

KEETON, District Judge.

On September 14, 1984, a grand jury returned a thirteen-count indictment against the seven defendants in this case. All defendants are charged with violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.* (1982) (Counts 1, 2). Defendants Angiulo, Cincotti, Kazonis, Lamattina, and Orlandella are charged with operating an illegal gambling business, in violation of 18 U.S.C. §§ 1955 and 2 (1982) (Counts 3–6). Defendants Angiulo, Gambale, Kazonis, and Limone are charged with obstruction of justice, in violation of 18 U.S.C. § 1503 (1982), and conspiracy to obstruct justice, in violation of 18 U.S.C. § 371 (1982) (Counts 7–9). Finally, defendants Gambale, Limone, and Orlandella are charged with conspiracy to make and collect extortionate extensions of credit in violation of 18 U.S.C. §§ 892(a) and 894(a) (1982) (Counts 10–13).

With the exception of defendant Lamattina, who is still at large, defendants have moved to dismiss the indictment and/or suppress evidence obtained as a result of electronic surveillance conducted by the government at 98 Prince Street, Boston, Massachusetts, from January 9, 1981 to May 3, 1981 and at 51 North Margin Street, Boston, Massachusetts, from January 30, 1981 to February 26, 1981 and from March 27, 1981 to May 12, 1981. Defendants have also moved for an evidentiary hearing on the above motions. In addition, defendants have made various motions which are unrelated to the electronic surveillance in this case. Oral arguments on these motions have been presented in three hearings, written submissions have been filed, and the motions are now ready for consideration.

I. *Motions Related to Electronic Surveillance*

During oral argument, and in submissions to the court, defendants essentially

asserted eleven different grounds in support of the various motions to dismiss the indictment and/or suppress evidence obtained as a result of electronic surveillance. Each will be considered in turn. The first six of these grounds, discussed in Sections I.B. through I.G., were asserted in similar fashion by defendant William Cintolo in motions before me, and the reasoning of the memorandum of decision in that case is equally applicable herein. *See United States v. Cintolo*, CR 84–397–G(K) (D.Mass., April 26, 1985). Rather than referring to that memorandum, however, for greater convenience I have incorporated applicable portions of it into the present memorandum.

## A. *Questions of Standing*

Before turning to defendants' arguments, I first consider whether any or all defendants have standing to challenge the various interceptions at issue in this case. The government argues that only defendant Cincotti and defendant Lamattina, who is not now before the court, have standing to challenge evidence obtained as a result of electronic surveillance at 51 North Margin Street. The government asserts, and defendants have not disputed, that none of the other defendants was either named in the orders authorizing electronic surveillance at 51 North Margin Street or was a party to conversations intercepted at that location. Nor is it claimed that any of the defendants had a proprietary interest in 51 North Margin Street.

▪ Under the provisions of Title III, "[a]ny aggrieved person ... may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom," on the ground that it was unlawfully intercepted. 18 U.S.C. § 2518(10)(a) (1982). The statute defines an "aggrieved person" as any "person who was a party to any intercepted wire or oral communication or a person against whom the interception was directed." *Id.* § 2510(11). Case law has clearly established that under Title III, as under Fourth Amendment principles, a defendant has

standing to assert only his own rights and may not successfully challenge the admissibility of evidence on the ground that it was obtained in violation of another person's rights. *See, e.g., Alderman v. United States*, 394 U.S. 165, 171–72, 176, 89 S.Ct. 961, 965, 968, 22 L.Ed.2d 176 (1969); *United States v. Williams*, 737 F.2d 594, 616 (7th Cir.1984) (citing cases), *cert. denied,* —— U.S. ——, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985). Rather, a defendant has standing to challenge electronic surveillance only if he can "show that it was directed at *him,* that the Government intercepted *his* conversations or that the [intercepted] communications occurred at least partly on *his* premises. Unless he can establish one of these events, it is legally irrelevant that the surveillance was unlawful." *United States v. Williams*, 580 F.2d 578, 583 (D.C. Cir.) (emphasis in original), *cert. denied sub nom. Lincoln v. United States*, 439 U.S. 832, 99 S.Ct. 112, 58 L.Ed.2d 127 (1978).

▪ Since only defendants Cincotti and Lamattina can establish one of these events, I conclude that none of the other defendants—Angiulo, Gambale, Kazonis, Limone, and Orlandella—has standing to challenge the evidence obtained as a result of electronic surveillance at 51 North Margin Street. Defendants' argument that they should have standing to challenge conversations intercepted at North Margin Street because "the Government is intending to introduce the sum total of all that evidence against all the defendants" is unavailing. Transcript, Oral Argument on Motions, April 29, 1985, at 28. The Supreme Court has specifically stated that suppression of evidence "can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence." *Alderman,* 394 U.S. at 171–72, 89 S.Ct. at 965.

I therefore turn to the grounds for suppression and/or dismissal of the indictment raised by defendants in their motions. Although only defendant Cincotti of the six defendants before this court has standing

to challenge the interceptions at 51 North Margin Street, I refer as a matter of convenience to the arguments being raised as being made by defendants, in the plural, since there is no question that all defendants have standing to challenge the interceptions at 98 Prince Street, since the arguments made are, with one exception, equally applicable to both locations and both locations are therefore treated together, and since defendants have raised the same challenges to the evidence obtained at both locations.

## B. *Taint*

■ Defendants first argue that evidence obtained as a result of electronic surveillance at 98 Prince Street and 51 North Margin Street should be suppressed because the surveillance was conducted pursuant to court orders on applications and supporting affidavits that were the fruit of illegal electronic surveillance. Specifically, they assert that the applications for authorization to conduct surveillance at the two locations were supported by evidence derived from unlawful interceptions conducted between March 1962 and June 1965 at the office of Raymond L.S. Patriarca on Atwells Avenue in Providence, Rhode Island, and between January 19, 1963 and July 10, 1965 at Jay's Lounge in Boston. Therefore, defendants argue, the evidence obtained against them as a result of the Prince Street and North Margin Street interceptions should be suppressed because it is the tainted product of earlier, illegal interceptions. *See Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963). They assert that, at the very least, this court should hold an evidentiary hearing to determine whether the evidence which supported the applications for authorization to conduct surveillance at 98 Prince Street and 51 North Margin Street was in fact tainted.

The above argument cannot be sustained. None of the defendants was present at either Atwells Avenue or at Jay's Lounge when the allegedly illegal interceptions took place. None had a proprietary interest in either location. As noted in Section I.A., *supra*, under both Fourth Amendment principles and Title III law, a defendant has standing to assert only his own rights, and may not successfully challenge the admissibility of evidence on the ground that it was tainted by the illegal infringement of some other person's rights. *See, e.g., Alderman v. United States*, 394 U.S. 165, 171–72, 176, 89 S.Ct. 961, 965, 968, 22 L.Ed.2d 176 (1969); *United States v. Williams*, 737 F.2d 594, 616 (7th Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985); *United States v. Fury*, 554 F.2d 522, 525–26 (2d Cir.1977), *cert. denied,* 436 U.S. 931, 98 S.Ct. 2831, 56 L.Ed.2d 776 (1978). Therefore, even if the interceptions at Atwells Avenue and Jay's Lounge were determined to be illegal, a question I need not address, defendants have no standing to challenge either the Prince Street or the North Margin Street surveillance as tainted by the surveillance at those two locations. That earlier surveillance, even if illegal, did not violate the rights of any of the defendants.

At oral argument, defendants suggested that the court should apply the law of standing as it existed between 1962 and 1965, at the time of the interceptions at Atwells Avenue and Jay's Lounge, rather than the law of standing as it exists today. I reject this suggestion. Defendants have advanced no valid reason to apply the law of standing as it existed between 1962 and 1965, rather than to follow the general practice of applying current law regarding standing. Nor have defendants shown that they would have had standing to challenge the interceptions at Atwells Avenue and Jay's Lounge under the law regarding standing then in effect.

Defendants also argue that the First Circuit's holding in *United States v. Plotkin*, 550 F.2d 693 (1st Cir.), *cert. denied sub nom. Considine v. United States*, 434 U.S. 820, 98 S.Ct. 61, 54 L.Ed.2d 76 (1977), supports their position. They correctly note that the First Circuit, in *Plotkin*, reversed a district judge's refusal to order the Federal Bureau of Investigation to produce for

a defendant transcripts of telephone calls involving the defendant which had been illegally intercepted, holding that such transcripts were a possible source of evidence that a second wiretap was the poisoned fruit of the first wiretap. They fail to note, however, that the First Circuit applied *Plotkin* only to the one defendant in the case who had standing to challenge the first interception as illegal:

> At the outset we note that all of the appellants are challenging the admission of the evidence on the ground that it is the fruit of an illegal wiretap which intercepted conversations of appellant Serino. None of the other appellants were allegedly overheard during any other illegal wiretap. Only appellant Serino therefore has standing to assert a violation of his Fourth Amendment rights in seeking to suppress the evidence.

*Id.* at 695. Since defendants here do not have standing to challenge the interceptions at Atwells Avenue or Jay's Lounge, the motion to suppress evidence or for an evidentiary hearing on this ground must be denied.

### C. *Authorization*

■ Defendants next argue that the evidence against them gained through electronic surveillance at 98 Prince Street and 51 North Margin Street must be suppressed because the authorizations for such surveillance were not made by a specially designated Assistant Attorney General, as required by 18 U.S.C. § 2516(1) (1982). That section provided, at the time the authorizations for surveillance in this case were signed, that "[t]he Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for ... an order authorizing or approving the interception of wire or oral communications ..." Defendants assert that the authorizations for surveillance were not made by an Assistant Attorney General with proper authority and that the orders permitting such surveillance are therefore invalid.

Careful consideration of the facts of this case, as well as the case law on this subject, indicates that this argument must be rejected. The facts concerning the challenged authorizations are as follows:

On January 9, 1981, Judge W. Arthur Garrity, Jr., issued an order authorizing the interception of oral communications at 98 Prince Street. Attached to the application for the order was an authorization, dated January 2, 1981, from Philip Heymann, then Assistant Attorney General in charge of the Criminal Division. Also attached was a copy of order number 799–78, issued by then Attorney General Griffin Bell on August 14, 1978. The order specially designated the Assistant Attorneys General in charge of the Criminal Division, the Tax Division, and the Office of Legal Counsel as officials empowered to authorize applications for electronic surveillance under 18 U.S.C. § 2516. In August 1979, Benjamin Civiletti succeeded Bell as Attorney General. As of January 9, 1981, no new § 2516 order was issued, nor was order number 799–78 revoked.

On January 30, 1981, Judge Garrity issued an order authorizing the interception of oral communications at 51 North Margin Street. Attached to the application for the order was an authorization, dated January 23, 1981, from Sanford Litvack, Assistant Attorney General in charge of the Antitrust Division. Litvack acted pursuant to order number 931–81, issued by then Attorney General Civiletti on January 19, 1981. That order designated the four Attorneys General in charge of the Criminal Division, the Tax Division, the Office of Legal Counsel, and the Antitrust Division, in that order, to exercise the power of the Attorney General, in his absence, to authorize applications for electronic surveillance and revoked order number 799–78. On January 23, 1981, the same day Litvack authorized the application for surveillance at 51 North Margin Street, William French Smith was sworn in as Attorney General. On February 6, 1981, Judge Garrity issued an order authorizing a thirty-day extension of the original surveillance order at 98 Prince

Street. Litvack also authorized the application to extend surveillance.

On February 27, 1981, Attorney General Smith issued order number 934–81, which specially designated the Assistant Attorney General in charge of the Office for Improvements in the Administration of Justice and stated that Civiletti's order remained in effect. Maurice Rosenberg, the Assistant Attorney General in charge of that office, authorized on March 5, 1981, an application to extend the surveillance at 98 Prince Street, which was approved by Judge Garrity on March 6, 1981. Judge A. David Mazzone approved the final thirty-day extension for surveillance at 98 Prince Street on April 3, 1981. Smith himself authorized that application to extend surveillance. Smith also authorized, on March 26, 1981, another application for surveillance at 51 North Margin Street, which was approved by Judge Garrity on March 27, 1981. On April 27, 1981, Judge Garrity entered an order extending surveillance at 51 North Margin Street for a period of 15 days. D. Lowell Jensen, Assistant Attorney General in charge of the Criminal Division, authorized the application to extend surveillance.

Defendants essentially argue that the Heymann authorization and, as a result, the order of January 9, 1981, authorizing electronic surveillance at 98 Prince Street, is invalid because Heymann relied on a designation from Attorney General Bell although Civiletti was Attorney General at the time of Heymann's action in this matter. They argue that the Litvack authorization and, as a result, the order of January 30, 1981, authorizing electronic surveillance at 51 North Margin Street and the order of February 6, 1981, extending surveillance at 98 Prince Street, are invalid because Litvack relied on a designation from Civiletti although, at the time of Litvack's action on this matter, Smith was Attorney General. Furthermore, they assert that Litvack's authorization is invalid because it did not state that the Attorney General and three other Assistant Attorneys General, who had priority over Litvack under order number 931–81, were ab-

sent or unavailable. Finally, defendants argue that the remaining orders of March 6, 1981, March 27, 1981, April 3, 1981, and April 27, 1981, are invalid because the evidence used to demonstrate probable cause for these orders was derived from the three prior, invalid orders.

Defendants' contentions must be rejected. No valid reason is advanced for interpreting § 2516(1) to require a special designation from the particular Attorney General in office at the time of the application for surveillance, rather than from an Attorney General in office at the time of the designation itself. There is, in fact, "no basis for holding that § 2516(1) represents a deviation from the usual rule that administrative orders ordinarily remain in effect beyond the tenure of the individual who issued them." *United States v. Wyder*, 674 F.2d 224, 227 (4th Cir.), *cert. denied sub nom. Mallory v. United States*, 457 U.S. 1125, 102 S.Ct. 2944, 73 L.Ed.2d 1340 (1982). The First Circuit, when faced with another challenge under § 2516(1), recently stated that "a valid designation continues in effect until revoked." *United States v. Bynum*, 763 F.2d 474, 475 (1st Cir.1985). It is true that a major purpose of § 2516 is to centralize "in a publicly responsible official subject to the political process the formulation of law enforcement policy on the use of electronic surveillance techniques," S.Rep. No. 1097, 90th Cong., 2d Sess., 96–97 (1968), U.S.Code Cong. & Admin.News 1968, pp. 2112, 2185, and that the Supreme Court, in *United States v. Giordano*, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), held that the Executive Assistant to the Attorney General could not authorize applications for wiretaps, even though the Attorney General wanted him to do so, because a purpose of § 2516(1) was to limit power to authorize wiretaps "to those responsive to the political process, a category to which the Executive Assistant to the Attorney General obviously does not belong." *Id.* at 520, 94 S.Ct. at 1829. Nonetheless, it is clear that Heymann and Litvack, who were appointed by the President with the advice and consent of the Senate,

*see id.* at 520 n. 9, 94 S.Ct. at 1829 n. 9, were clearly identifiable and politically accountable persons within the Justice Department. *See United States v. Robinson,* 698 F.2d 448, 452 (D.C.Cir.1983); *United States v. Wyder,* 674 F.2d at 227. Numerous circuit courts have upheld the validity of authorizations made by Heymann and Litvack under similar circumstances. *See, e.g., United States v. Messersmith,* 692 F.2d 1315, 1317 (11th Cir.1982) (Heymann authorization); *United States v. Wyder,* 674 F.2d at 226–27 (same); *United States v. Terry,* 702 F.2d 299, 310–11 (2d Cir.), *cert. denied sub nom. Williams v. United States,* 461 U.S. 931, 103 S.Ct. 2095, 77 L.Ed.2d 304 (1983) (Litvack authorization); *United States v. Robinson,* 698 F.2d at 452 (same).

I conclude that the fact that the Attorney General who designated Heymann and Litvack to authorize applications for electronic surveillance was not in office at the time the application was filed does not invalidate the order granting such surveillance. I further conclude that Litvack is presumed to have properly exercised his designated power and acted because the Attorney General and other Assistant Attorneys General with higher priority were absent or unavailable, although his authorization does not so state. Defendants have failed to offer evidence to the contrary, and their contention is no more than conjecture or speculation. *United States v. Terry,* 702 F.2d at 311. Defendants' motion to suppress on this ground must therefore be denied.

### D. *Sealing and Unsealing*

Defendants next argue that the evidence against them should be suppressed because the government failed to comply with the sealing requirements of 18 U.S.C. § 2518(8)(a) by unsealing the tapes at issue in this case to make duplicate or enhanced copies. The pertinent portion of § 2518(8)(a) provides that "[i]mmediately upon the expiration of the period of the order [permitting electronic surveillance], or extension thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions." Defendants' contention essentially has three prongs.

First, they argue that Title III nowhere provides for the unsealing of tape recordings of intercepted oral communications before trial, once the tapes have been sealed. Second, analogizing the government's unsealing of the tapes in this case to cases involving delays in sealing, they argue that the government has not presented a satisfactory explanation for its actions in unsealing the tapes. Finally, they argue that the government misled Judge Garrity as to the necessity for his permitting the tapes to be unsealed.

Defendants are correct that Title III does not explicitly provide the statutory authority to unseal tapes originally sealed. Their argument that a court therefore has no authority to permit the unsealing of tapes proves too much, however. They do not contest that the statute implicitly permits unsealing for use at trial. If it did not implicitly permit, also, unsealing of tapes before trial, defendants would never be able to gain access to them before trial, a result clearly at odds with the language and purpose of Title III. Instead of inferring that the absence of explicit authorization for unsealing is to be interpreted as a prohibition of unsealing (a classic instance of the fallacy of the undistributed middle) a court more reasonably approaches this issue as one that Congress simply did not address in enacting Title III. In such circumstances, courts should be guided in answering the question by the aims, principles, and policies that manifestly underlie the enacted statute. *Cf. Universal Camera Corp. v. NLRB,* 340 U.S. 474, 487, 71 S.Ct. 456, 463, 95 L.Ed.2d 456 (1951) (Frankfurter, J.); *In the Matter of an Application of the United States for an Order Authorizing Interception of Oral Communications and Videotape Surveillance,* 513 F.Supp. 421, 423 (D.Mass.1980).

■ Title III is sensibly construed as not prohibiting the unsealing of tapes for good cause, such as to make enhanced or dupli-

cate tapes. A contrary interpretation, as noted above, would not make sense. Several courts have allowed the unsealing of tapes for the purpose in question here. *See, e.g., United States v. Lambert*, No. 84–4–S (E.D.Ky., May 23, 1984); *In the Matter of an Application of the United States of America for an Order Authorizing the Interception of Wire Communications*, Misc. No. 10122 (C.D.Cal., Apr. 23, 1981). *See also United States v. Diana*, 605 F.2d 1307, 1315 (4th Cir.1979) ("No reason is apparent why the government could not have obtained a court order to unseal the specific tapes it needed."), *cert. denied*, 444 U.S. 1102, 100 S.Ct. 1067, 62 L.Ed.2d 787 (1980). I conclude that a court has inherent authority to order the unsealing of tapes previously sealed upon a showing of good cause.

■ Defendants argue, however, that the government has not provided a satisfactory explanation for its actions. Analogizing the unsealing in this case to cases involving delays in sealing, they contend that suppression of the tapes is required absent such an explanation. The analogy is inapt, and must be rejected. In cases involving delays in sealing, a problem arises because the tape recordings which are made are not placed under the supervision and control of a neutral judicial officer for a certain period of time. Suppression may therefore be appropriate in circumstances where there is a fear of tampering or manipulation of recorded evidence. Here, by contrast, the tapes were unsealed only pursuant to a court order and in the presence of an authorizing judge. Given such judicial supervision and control of the government's actions, the problems associated with delays in sealing simply are inapplicable here, especially since there was no delay in sealing the tape recordings made either at 98 Prince Street or at 51 North Margin Street.

Defendants argue, however, that suppression is nonetheless appropriate because the government misled Judge Garrity as to the need to unseal the tape recordings. They argue that the government could have accomplished its purposes by enhancing duplicate, rather than original recordings. Defendants argue as well that the government could have used multiple tape recorders to make simultaneous original recordings and then enhanced one of the duplicate originals. They assert that duplicate originals were in fact made during a portion of the monitoring at 51 North Margin Street.

I conclude, based on the submissions before me (including materials examined *in camera* pursuant to oral order on defendants' motion in the alternative to a motion for production), that defendants have not shown that the government misled Judge Garrity into granting its motions to unseal. Nor was the government obligated to follow the procedures suggested by defendants. Even if it be assumed that some other way of meeting the government's demonstrated need would have been possible, and perhaps even wiser or better in some way, I cannot find on the record before me that the government was either unreasonable or lacked good cause in presenting its request for authorization to unseal the tapes. Defendants' motion to suppress on this ground is therefore denied.

### E. *Subterfuge*

■ Defendants next argue that the government's entire Title III application process was founded upon subterfuge. They assert that the government was actually conducting a RICO investigation of the Angiulo family and its associates before 1981, but that it knew in the beginning of 1981 that it could not make a showing of probable cause sufficient to permit the issuance of orders for electronic surveillance for RICO offenses under the law of the First Circuit at the time. The First Circuit, in *United States v. Turkette*, 632 F.2d 896 (1st Cir.1980), *rev'd*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), had decided on September 23, 1980, that the RICO statute applied only to the infiltration of legitimate business activities and not to individuals engaged in wholly illegitimate acts, and the

Supreme Court did not reverse this decision until June 17, 1981. Therefore, defendants allege, the government intentionally misled Judges Garrity and Mazzone (who granted the surveillance orders) by presenting applications based on alleged gambling and loansharking offenses, when in fact it was conducting a RICO investigation all along.

Based on the record before me (including materials examined *in camera* as noted above), I cannot say that defendants have presented any evidence that would support—or even tend to suggest good cause for supposing that other evidence sought to be developed by discovery demands or an evidentiary hearing would support—a finding of such subterfuge on the part of the government. It is true that a RICO code number appears on some materials and documents related to this case. It is also uncontested that the government was conducting a RICO investigation of the Angiulos as early as 1976. Finally, it is true that Wendy Collins, a special attorney who helped supervise the surveillance in the case, sought and obtained in April 1981 an order under 18 U.S.C. § 2517(5) authorizing the use in a RICO prosecution of conversations intercepted at 98 Prince Street. A leap of speculation rather than reasoned inference remains, however, between each of these facts, or the combination of all of them, and any suggested finding that the government engaged in some sort of subterfuge. Certainly it was not improper for the government to attempt a RICO investigation of the Angiulos before the First Circuit's decision in *Turkette*. For purposes of considering this issue I assume, as defendants contend, that once *Turkette* was decided by the First Circuit (and before reversal by the Supreme Court), it would have been difficult if not impossible for the government to show a valid basis for obtaining an order authorizing electronic surveillance of the Angiulos for RICO violations. Collins in fact testified that she had considered filing a Title III application citing RICO, but rejected this course of action because of the holding in *Turkette*. The inference to be drawn, however, is not that the government thereafter engaged in

some sort of subterfuge. Rather, the more compelling inference is that after the First Circuit's ruling, the government attempted to make the best of an adverse situation and therefore filed a Title III application based upon gambling and loansharking violations. That the government failed to change all its file numbers is plainly insufficient to support the sinister inference for which defendants argue. Indeed, it would be more likely that such a step as that would have been given first order attention if a plan of deception had been generated. Thus, neither the existence of a RICO file designation on certain documents nor the § 2527(5) application filed in April 1981, supports a finding contrary to the one I make on the submissions before me. Defendants have made no more than a conclusional submission to contradict Collins' assertion that she filed a § 2517(5) application for an order authorizing the use of intercepted conversations in a RICO prosecution because the government had obtained evidence through interceptions of possible infiltration of legitimate businesses. In any event, such an application was filed after the Supreme Court granted certiorari in *Turkette*. Given the requirement that such an application be filed "as soon as practicable," 18 U.S.C. § 2517(5) (1982), I cannot say that the filing of such an application is evidence of government subterfuge.

I therefore conclude that the defendants have not made a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth" was made by the government in seeking authorization for electronic surveillance. *See Franks v. Delaware*, 438 U.S. 154, 155, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978). I therefore deny defendants' motion to suppress, and their motion for an evidentiary hearing, on this ground.

## F. *Minimization*

Defendants next argue that evidence against them should be suppressed because, in conducting electronic surveillance,

the government failed to minimize the interception of non-pertinent conversations. *See* 18 U.S.C. § 2518(5) (1982) (electronic surveillance "shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter ..."). They assert that the government effectively turned its surveillance into a general search warrant, by listening to two out of every three minutes of conversations, regardless of subject matter, and by monitoring conversations not within the scope of the surveillance authorized by the court.

■ Whether the government properly minimized its interceptions is to be determined by a case-by-case analysis of the reasonableness of the government's conduct. *Scott v. United States*, 436 U.S. 128, 139–40, 98 S.Ct. 1717, 1724, 56 L.Ed.2d 168 (1978). Whether government agents acted reasonably in a given case is affected by such factors as the nature and scope of an alleged conspiracy, the government's reasonable expectation of the character of the conversations they will be intercepting, and the extent of ongoing judicial supervision over the surveillance. *See United States v. Dorfman*, 542 F.Supp. 345, 390 (N.D.Ill. 1982) (citing cases), *aff'd sub nom. United States v. Williams*, 737 F.2d 594 (7th Cir. 1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985).

■ Applying the above factors to the record before me, I cannot sustain defendants' contention that the government's actions in this case concerning minimization were improper or unreasonable. I credit the affidavits of Agent Edward M. Quinn, who supervised electronic surveillance at 98 Prince Street, and Agent Sean Rafferty, who supervised the surveillance at 51 North Margin Street. The Quinn affidavit states that the government took the following steps when conducting electronic surveillance at 98 Prince Street: Government attorneys personally instructed all monitoring agents concerning minimization procedures. Every agent reviewed the applications, orders, and memoranda concerning minimization prepared by government attorneys before monitoring any conversations and such documents were prominently posted at the monitoring site. Monitoring equipment was operated manually so that no conversations were recorded without being monitored and vice versa. Every monitoring agent maintained a log book in which the date, time, and substance of any intercepted communications were recorded, as well as the identities of the participants, if known. Other agents reviewed the logs and tapes on a daily basis and five-day progress reports, submitted to the supervising judge, detailed the progress and results of the surveillance. The Rafferty affidavit describes similar procedures which were used when conducting electronic surveillance at 51 North Margin Street.

■ Both affidavits also indicate that intermittent monitoring, or spot checking, was used until conversations of a criminal nature were detected. Monitoring ceased when agents determined that only personal, non-criminal activity was being discussed. Such intermittent monitoring did not commence until it was ascertained that one of the interceptees named in the order authorizing surveillance was in the room. I cannot say that such intermittent monitoring is improper as a matter of law, even if, as defendants contend, the procedure consisted of turning on the recording equipment for two minutes and turning it off for one minute. Intermittent monitoring is a "reasonable method" for complying with minimization requirements. *See, e.g., United States v. Daly*, 535 F.2d 434, 442 n. 8 (8th Cir.1976). Furthermore, the provision of five-day reports to the authorizing judge supports the conclusion that the monitoring in this case was reasonable. *See, e.g., United States v. Quintana*, 508 F.2d 867, 875 (7th Cir.1975).

Finally, the extensive monitoring in this case may be justified by the broad nature and scope of the conspiracy being investigated. The government's bill of particulars, filed in this case and in *United States v. Angiulo*, CR 83–235–N, indicates that numerous persons were involved in the al-

legedly illegal gambling activities of the Angiulos.

> [W]hen the investigation is focusing on what is thought to be a widespread conspiracy more extensive surveillance may be justified in an attempt to determine the precise scope of the enterprise. And it is possible that many more of the conversations will be permissibly interceptable because they will involve one or more of the co-conspirators.

*Scott,* 436 U.S. at 140, 98 S.Ct. at 1724.

The conversations cited by defendants in their motion for evidentiary hearing as supposed examples of non-criminal conversations intercepted by the government do not change the result herein. These conversations all took place at 98 Prince Street between January 26, 1981 and February 9, 1981. Monitoring of conversations began there on January 19, 1981. "During the early stages of surveillance the agents may be forced to intercept all calls to establish categories of nonpertinent calls which will not be intercepted thereafter." *Scott,* 436 U.S. at 141, 98 S.Ct. at 1725. As Judge Marshall has explained, "[i]t is not enough for the defendants to identify particular calls which they contend should not have been intercepted; they must establish a pattern of interception of innocent conversations which developed" over the period of surveillance. *United States v. Dorfman,* 542 F.Supp. at 391. I conclude that defendants have not established a pattern of government interception of innocent conversations. I therefore deny the motion to suppress on this ground. I further conclude that defendants have not produced "evidence that a substantial number of nonpertinent conversations [were] intercepted unreasonably." *United States v. Cirillo,* 499 F.2d 872, 881 (2d Cir.), *cert. denied,* 419 U.S. 1056, 95 S.Ct. 638, 42 L.Ed.2d 653 (1974). I therefore deny defendants' motion for an evidentiary hearing on the minimization question. *See United States v. Migely,* 596 F.2d 511, 513 (1st Cir.), *citing Cohen v. United States,* 378 F.2d 751, 761 (9th Cir.), *cert. denied,* 389 U.S. 897, 88 S.Ct. 217, 19 L.Ed.2d 215 (1967) (evidentiary hearing is appropriate only if defendant alleges facts "sufficiently definite, specific, detailed, and non-conjectural, to enable the court to conclude that a substantial claim is presented"), *cert. denied,* 442 U.S. 943, 99 S.Ct. 2887, 61 L.Ed.2d 313 (1979).

### G. Compliance With § 2517(5)

Defendants next contend that the evidence against them should be suppressed because the government improperly disclosed evidence of "other crimes" not listed in the order authorizing electronic surveillance, thereby violating 18 U.S.C. § 2517(5) (1982). Defendants have also moved to dismiss various counts of the indictment on this ground.

Section 2517(5) states as follows:

> When an investigative or law enforcement officer, while engaged in intercepting wire or oral communications in the manner authorized herein, intercepts wire or oral communications relating to offenses other than those specified in the order of authorization or approval, the contents thereof, and evidence derived therefrom, may be disclosed or used as provided in subsections (1) and (2) of this section. Such contents and any evidence derived therefrom may be used under subsection (3) of this section when authorized or approved by a judge of competent jurisdiction where such judge finds on subsequent application that the contents were otherwise intercepted in accordance with the provisions of this chapter. Such application shall be made as soon as practicable.

On April 10, 1981, Judge Garrity signed an order pursuant to 18 U.S.C. § 2517(5) authorizing the disclosure of evidence obtained through electronic surveillance at 98 Prince Street of possible violations of, among other offenses, 18 U.S.C. § 1962, the RICO statute under which defendants are charged in Counts 1 and 2. On October 16, 1981, Judge Garrity signed a similar disclosure order for evidence obtained through electronic surveillance at 51 North Margin Street.

Defendants raise several objections to Judge Garrity's § 2517(5) authorizations and to the actions taken by the government in disclosing evidence of violations of RICO, a crime for which interception of communications was not authorized under the orders permitting electronic surveillance.

First, defendants argue that the orders signed by Judge Garrity are not sufficient to meet the requirements of the statute, in part because the orders did not include specific findings that the conversations which the government wished to disclose were otherwise intercepted in accordance with the provisions of Title III. They add that such conversations could not possibly have been "otherwise intercepted" or incidentally intercepted given the pervasive monitoring of the government in this case. Second, defendants argue that the government did not and in fact could not present the information upon which Judge Garrity could make the specific findings they allege are necessary to support an order pursuant to § 2517(5). In this regard, defendants note that the April 3, 1981 affidavit of Agent Quinn submitted by the government in support of its application to extend surveillance at 98 Prince Street was not necessarily before Judge Garrity when he issued the § 2517(5) order on April 10, 1981, since it was Judge Mazzone who authorized the extension of surveillance at 98 Prince Street on April 3, 1981. Third, defendants argue that certain conversations must be suppressed because they were not described to Judge Garrity with enough specificity to enable him to determine whether they could properly be disclosed under § 2517(5). Therefore, they argue, such conversations are not covered by Judge Garrity's order.

 I conclude that these arguments must be rejected. First, contrary to defendants' assertions, Title III does not require or even impliedly authorize a de novo review of the sufficiency of the evidence presented to Judge Garrity, or of Judge Garrity's order itself. As Judge Marshall explained in *United States v. Dorfman*, 542 F.Supp. 345 (N.D.Ill.1982), *aff'd sub nom. United States v. Williams*, 737 F.2d 594 (7th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985):

> Suppression of evidence is only authorized pursuant to § 2515 or 2518(10). Since an order permitting the use of the evidence in this proceeding was obtained, there can be no argument that "disclosure of the information would be in violation of this chapter" under § 2515. All the statute requires on its face is that an order be secured and that was done in the case at bar. Nor can an insufficient showing under § 2517(5) render the interception "unlawful" under § 2518(10). That section of the statute focuses on the lawfulness of the *interception*, not the subsequent acts of the government.

*Id.* at 401 (footnotes omitted) (emphasis in original). Even were I to evaluate Judge Garrity's order, I could not say such an order was insufficient, or that the information placed before Judge Garrity by the government, in applying for authorization under § 2517(5), was insufficient. If he required information in addition to that contained in the government's application, Judge Garrity was free to consult the readily available materials. *See United States v. Masciarelli*, 558 F.2d 1064, 1068 (2d Cir.1977); *United States v. Dorfman*, 542 F.Supp. at 402 n. 74. It is of no import that Judge Mazzone authorized the April 3rd extension of electronic surveillance at 98 Prince Street but Judge Garrity entered the § 2517(5) order. *See United States v. Arnold*, 576 F.Supp. 304, 311 (N.D.Ill.1983) ("the defendants' complaint that the change of chief judges who supervised the wiretap authorizations prejudiced them is also frivolous. The defendants have not demonstrated how the change of chief judges prejudiced them or interfered with the proper monitoring of the wiretaps. Absent more, a mere conclusory allegation that this change prejudiced them is an insufficient basis upon which to grant a motion to suppress."). Moreover, defendant has provided no more than a conclusional allegation that Judge Garrity somehow did

not have the April 3rd affidavit of Agent Quinn before him.

I reject defendants' argument that the "other crimes" conversations for which disclosure was authorized in Judge Garrity's order could not have been incidentally intercepted given the pervasiveness of the government's monitoring. As I have ruled in Part I.F., *supra,* the government did not act improperly as to minimization, and did not fail to minimize the interception of noncriminal conversations. Since the interception of evidence related to the offenses named in the surveillance order was conducted lawfully, evidence of other crimes could be intercepted "incidentally" during the course of lawfully executing the order authorizing surveillance. *United States v. McKinnon,* 721 F.2d 19, 22 (1st Cir.1983). The First Circuit has stated that "something does not have to be unanticipated in order to be incidental. Evidence of crimes other than those authorized in a wiretap warrant are intercepted 'incidentally' when they are the by-product of a bona fide investigation of crimes specified in a valid warrant." *Id.* at 23. Applying such a standard, I conclude that evidence of other crimes was properly intercepted incidentally in this case.

I also reject the argument that certain conversations must be suppressed because they were not disclosed with enough specificity to enable Judge Garrity to determine whether they could properly be disclosed under § 2517(5). Defendants' suggestion that "other crimes" conversations need to be particularized and specified in order for them to be eligible for disclosure is simply not borne out by the statute. Section 2517(5) merely states that the contents of "other crimes" conversations may be disclosed when authorized by a judge, as Judge Garrity did here. There is no requirement in § 2517 that the judge listen to or know about each such conversation. *United States v. McKinnon,* cited by defendants, simply does not support their argument on this point. The First Circuit in that case upheld the district court's suppression of one conversation and its refusal

to suppress two other conversations because it found that the disclosure of the two other conversations had been implicitly authorized by the supervising judge when he renewed the wiretap but that officers had never sought authorization to use the third conversation. *See* 721 F.2d at 23. The case simply does not stand for the proposition that a supervising judge, when authorizing disclosure under § 2517(5), needs to engage in a conversation-by-conversation analysis.

Defendants' most troubling argument has two aspects. They assert that the indictment in this case charges them with being members of a wholly illegitimate enterprise. On April 10, 1981, however, when Judge Garrity authorized disclosure of evidence of possible violations of the RICO statute, 18 U.S.C. § 1962 (1982), the First Circuit had held that RICO applied only to infiltration of legitimate businesses and not to wholly criminal enterprises. *United States v. Turkette,* 632 F.2d 896 (1st Cir.1980). It was not until June 17, 1981, that the Supreme Court reversed this decision and held that the RICO statute applies to both legitimate and illegitimate enterprises. *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). Therefore, defendants argue, Judge Garrity could not authorize disclosure of evidence of violations of RICO by a wholly illegitimate enterprise such as that charged in the indictment because the law of the First Circuit at the time was that RICO did not apply to such enterprises. They thus assert that Judge Garrity's order, as applied to disclosure of evidence of violations of RICO by wholly illegitimate enterprises, is a nullity and that the government therefore disclosed "other crimes" information without proper authorization, in violation of § 2517(5). In any event, defendants argue, Judge Garrity's order, even if valid, cannot provide authorization for the disclosure of "other crimes" information intercepted between April 10, 1981 and May 3, 1981, after the issuance of the order. The government therefore violated § 2517(5) by disclosing

information obtained through electronic surveillance during this period, they assert. Of course, the above two arguments do not apply to the disclosure of "other crimes" information intercepted at 51 North Margin Street, since Judge Garrity's § 2517(5) order for that location was entered on October 16, 1981, after the Supreme Court's holding in *Turkette* and after the completion of electronic surveillance.

In response, the government notes that Judge Garrity's order referred merely to disclosure of evidence of possible violations of 18 U.S.C. § 1962. It did not distinguish between legitimate and illegitimate enterprises. Therefore, the government argues, it could properly disclose evidence of RICO violations by wholly illegitimate enterprises under Judge Garrity's order following the Supreme Court decision in *Turkette*. Alternatively, the government asserts that it is not at all clear that the First Circuit's holding in *Turkette* should be considered the law of the circuit at the time of Judge Garrity's order, given that the Supreme Court had already granted certiorari in the case. Under either analysis, the government argues that Judge Garrity's order should be viewed not as a nullity, but as authorization for the disclosures made by the government. I need not and do not address the difficult and troubling question of the scope and effect of Judge Garrity's reference in the § 2517(5) order to the RICO statute, and whether such a reference would authorize the disclosure of evidence of RICO violations by a wholly illegitimate enterprise. Instead, I conclude that, even ignoring the reference to § 1962 in Judge Garrity's order, neither dismissal of the indictment nor suppression of evidence is warranted or necessitated under the circumstances of this case.

The issue raised by the circumstances of this case is arguably one of first impression. Research has disclosed no case in which conversations intercepted pursuant to lawfully conducted electronic surveillance subsequently became evidence of another crime because of a Supreme Court ruling. (I assume, for purposes of argument, that the First Circuit's holding in

*Turkette* was the law of the circuit before the Supreme Court's reversal). Analogies to other cases involving alleged violations of § 2517(5), however, disclose two alternative grounds requiring denial of defendants' motion to dismiss the indictment or suppress evidence.

First, numerous courts, including the First Circuit, have determined that § 2517(5) does not require explicit authorization for the disclosure of "other crimes" information. Rather, authorization can be implicitly obtained when a judge grants an extension of the order authorizing surveillance, after being advised in applications, affidavits, and/or five-day progress reports that "other crimes" conversations have been intercepted. *See, e.g., United States v. McKinnon*, 721 F.2d at 23–24; *United States v. Johnson*, 696 F.2d 115, 125 (D.C. Cir.1982); *United States v. Masciarelli*, 558 F.2d 1064, 1069 (2d Cir.1977). The judge's approval of an extension, when presented with the above information, constitutes a determination that the original order was lawfully obtained, that it was sought in good faith and not as a subterfuge search, and that the "other crimes" conversations have been incidentally intercepted. *See United States v. Masciarelli*, 558 F.2d at 1068; *United States v. Harvey*, 560 F.Supp. 1040, 1066 (S.D.Fla.1982). Here, the progress reports, affidavits, and applications submitted to Judges Garrity and Mazzone during the course of electronic surveillance at 98 Prince Street and in an attempt to obtain extensions of such surveillance clearly described conversations related to the predicate acts which form the basis for the RICO prosecution in this case. Thus, Judges Garrity and Mazzone implicitly authorized the disclosure of evidence of information related to probable violations of RICO intercepted at 98 Prince Street by authorizing extensions of surveillance at that location.

It is true that the government, in its submissions, did not refer to the RICO statute by number. This may have been because the Supreme Court had not yet

reversed the First Circuit and held that RICO applied to wholly illegitimate enterprises. *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). Whatever the reason, the lack of specific reference to § 1962 does not at all negate the implicit authorization in this case, given the description of the relevant conversations in the government's submissions. The Second Circuit's decision in *United States v. Tortorello*, 480 F.2d 764 (2d Cir.), *cert. denied*, 414 U.S. 866, 94 S.Ct. 63, 38 L.Ed.2d 86 (1973), provides an instructive analogy. In that case, the government obtained a wiretap authorization under New York State law for a variety of offenses, including grand larceny. In carrying out the wiretap the government uncovered a securities fraud scheme which it set out in renewal affidavits to the judge who had authorized the original wiretap. The government did not, however, specify the federal statutes allegedly violated by the securities fraud scheme. Nonetheless, the Second Circuit held that the renewal of the wiretaps satisfied § 2517(5) even without a reference to the specific federal statutory violation, explaining that "[i]t is enough that notification of the interception of evidence not authorized by the original order be clearly provided in the renewal and amendment application papers." *Id.* at 783. *See also United States v. Masciarelli*, 558 F.2d at 1068–69. Similarly, § 2517(5) is satisfied here by the description in the government's submissions of "other crimes" conversations, even without a specific statutory reference to RICO.

■ Alternatively, even if the concept of implicit authorization is inapplicable, neither dismissal of the indictment nor suppression of evidence is warranted here. The Supreme Court has stated that, under Title III, suppression is required only for a "failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." *United States v. Donovan*, 429 U.S. 413, 433–34, 97 S.Ct. 658, 671, 50 L.Ed.2d 652 (1977); *United States v. Giordano*, 416 U.S. 505, 527, 94 S.Ct. 1820, 1832, 40 L.Ed.2d 341 (1974). Several courts have noted that neither dismissal of an indictment nor suppression of evidence may be an appropriate remedy, even where the technical requirements of § 2517(5) have not been met. *See, e.g., United States v. Vento*, 533 F.2d 838, 855–56 (3d Cir.1976); *United States v. Harvey*, 560 F.Supp. at 1082; *United States v. Dorfman*, 532 F.Supp. 1118, 1137 (N.D.Ill.1981) (citing cases), *aff'd sub nom. United States v. Williams*, 737 F.2d 594 (7th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985). Rather, "the proper procedure in deciding what, if any, sanction is appropriate requires an examination of the purpose to be served by the Title III requirement which has been violated and a decision as to whether that purpose has been frustrated by the violation." *United States v. Aloi*, 449 F.Supp. 698, 721 (E.D.N.Y.1977).

■ Both the First Circuit and the Fifth Circuit have agreed that, by enacting § 2517(5), "Congress wished to assure that the Government does not secure a wiretap authorization order to investigate one offense as a subterfuge to acquire evidence of a different offense for which the prerequisites to an authorization order are lacking." *United States v. Southard*, 700 F.2d 1, 31 (1st Cir.), *cert. denied sub nom. Ferris v. United States*, —— U.S. ——, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983); *United States v. Campagnuolo*, 556 F.2d 1209, 1214 (5th Cir.1977). I have already concluded in section I.E. above that the government did not engage in a subterfuge search in this case. Furthermore, the fact that Judge Garrity issued a § 2517(5) order on April 10, 1981 means that he determined that the original order was sought in good faith and lawfully obtained and that the "other crimes" conversations were incidentally intercepted during a lawfully executed order. This finding would be true whether or not the reference to § 1962 was broad enough to cover possible violations by wholly illegitimate enterprises, since the

§ 2517(5) order authorized disclosure of other federal crimes as well. *See United States v. Arnold,* 576 F.Supp. at 310–11; *United States v. Aloi,* 449 F.Supp. at 721–23.

The situation in *Aloi* is in fact analogous to this case. In *Aloi,* the government obtained a series of wiretap orders authorizing the interception of conversations relating to bribery of public officials and conspiracy to commit this act, in violation of state law. No federal offense was alleged in these orders. Subsequently, the government obtained a § 2517(5) order authorizing disclosure of evidence of various federal offenses, including 18 U.S.C. § 1952 (1982), use of interstate commerce to commit bribery. The § 2517(5) order did not, however, authorize the disclosure of information related to 18 U.S.C. § 371 (1982), the conspiracy statute. Defendants, who were indicted under both statutes, contended that dismissal of the indictment or suppression of the evidence was the only appropriate remedy, because the § 2517(5) order did not refer to § 371.

The *Aloi* court rejected this contention. It noted that the purpose of obtaining a § 2517(5) order, that of insuring that the original wiretap was obtained in good faith and not as a subterfuge, was accomplished when the government obtained an order authorizing disclosure of evidence related to possible violations of § 1952:

> Returning to a judge to get a further disclosure order for the section 371 offense would have served no useful purpose and would have in no way furthered any goal of Title III. This is especially true where, as here, each intercepted conversation was properly intercepted pursuant to the initial state order and is probative of both the offenses named in the initial and amended state orders and section 371.

449 F.Supp. at 722–23 (footnote omitted).

The government obtained a § 2517(5) order in this case as well, thereby satisfying the underlying purposes of the statute. Furthermore, intercepted conversations which are probative of RICO violations, because they relate to acts of racketeering indictable under 18 U.S.C. §§ 892, 894, 1503, and 1955, are also probative of those offenses themselves, for which defendants were indicted in Counts 3 through 6 and Counts 8 through 13. The orders and extensions of surveillance at 98 Prince Street specifically authorized the government to intercept conversations related to the above offenses, and, as I have ruled above, such conversations were properly intercepted. No § 2517(5) order was even needed for these conversations. The government's actions thus did not undermine the goals and purposes of Title III, and neither suppression of evidence nor dismissal of the indictment is appropriate. It would in fact be impossible to suppress such evidence at trial because it was inadmissible in a RICO prosecution when the conversations were properly intercepted and admissible because they related to the other counts of the indictment, to which no claim of violation of § 2517(5) applies. A very recent Eleventh Circuit case, *United States v. Watchmaker,* 761 F.2d 1459 (11th Cir. 1985), also compels the conclusion that neither suppression of evidence nor dismissal of the indictment is appropriate. In *Watchmaker,* the government obtained orders authorizing the interception of communications related to the delivery and sale of various drugs and controlled substances. Defendants argued that, by disclosing such communications to a grand jury considering RICO (rather than drug law) violations without any prior authorization, the government violated § 2517(5). The Eleventh Circuit rejected a defense request to dismiss the indictment, noting that one rationale for authorizing the use of such evidence in a RICO prosecution was that

> the prosecution under the RICO statute bears a unique kind of similarity to the prosecution under the drug law. It is not merely a question of crimes which have "some common elements" or "some overlapping proof": where, as here, a drug offense is one of the predicate acts for the RICO violation, every element of that offense must be proven before the RICO violation can be established. Al-

though the object of the RICO statute might be different, the extent of similarity in what must be proved makes "subterfuge" virtually impossible; the government might seek, in the long run, to offer additional proof against the "enterprise," but in the context of the intercepted conversation, it is most likely that the government is interested in offering evidence of the predicate offense.

*Id.*, at 1470–71. Certainly, if such evidence could be used in *Watchmaker*, where defendants were charged only with RICO violations, it could be disclosed in this case, where defendants are charged both with RICO violations and with violations of statutes for which electronic surveillance was initially authorized.

The cases cited by the defendants in support of dismissal of the indictment or suppression of evidence are distinguishable. In *United States v. Brodson*, 528 F.2d 214 (7th Cir.1975), *United States v. Marion*, 535 F.2d 697 (2d Cir.1976), and *United States v. Carlberg*, 602 F.Supp. 583 (W.D. Mich.1984), cases where noncompliance with § 2517(5) resulted in dismissal of the indictments, no § 2517(5) application was ever made and therefore no judge ever evaluated the propriety of the otherwise intercepted conversations. There was no determination that the original order was sought in good faith and the "other crimes" conversations were incidentally intercepted. *See United States v. Arnold*, 576 F.Supp. at 310–11; *United States v. Aloi*, 449 F.Supp. at 722–23. Here, by contrast, Judge Garrity made such a determination in issuing the § 2517(5) order, thereby satisfying the underlying purposes of Title III described by the First Circuit in *United States v. Southard*, 700 F.2d at 31. Additionally, *United States v. Carlberg* is distinguishable because there, with one exception, all five-day progress reports stated that "[n]o intercepted communications concerned crimes other than those set forth in the Court's order." 602 F.Supp. at 588. Here, by contrast, the government described the other crimes to which the intercepted conversations related in sufficient detail so as to satisfy the concept of implicit authorization.

■ I therefore conclude that the government satisfied the requirements of § 2517(5) in this case. Alternatively, I conclude that the circumstances of this case warrant neither dismissal of the indictment nor suppression of the evidence intercepted through electronic surveillance. Because I have so concluded, no review of grand jury testimony is necessary to answer the question raised in *United States v. McKinnon*, 721 F.2d at 23, as to whether the grand jury would have indicted the defendants absent the disclosure of conversations of which they complain. Here, defendants cannot complain, no improper disclosures having been made. For this reason, and because I have concluded above that the defendants have not shown that the government engaged in subterfuge, misled Judge Garrity, or improperly intercepted conversations at either 98 Prince Street or 51 North Margin Street, I conclude that defendants have not shown a basis upon which they are entitled to disclosure of information relating to the grand jury, or why the rule of grand jury secrecy should not be followed in this case. Defendants' motion for discovery of such information is denied.

H. *Disclosure of Prior Applications for Surveillance*

■ Defendants next argue that the evidence against them obtained through electronic surveillance should be suppressed because the government failed to disclose prior applications for electronic surveillance in seeking authorization to intercept conversations at 98 Prince Street and 51 North Margin Street. The statute requires that an application to conduct electronic surveillance contain

... a full and complete statement of the facts concerning all previous applications known to the individual authorizing and making the application, made to any judge for authorization to intercept, or for approval of interceptions of, wire or oral communications involving any of the

same persons, facilities or places specified in the application, and the action taken by the judge on each such application. . . .

18 U.S.C. § 2518(1)(e) (1982). Defendants' argument, in essence, is that the government failed to disclose in its various applications the names of individuals who were intercepted or were expected to be intercepted at either 98 Prince Street or 51 North Margin Street, whether these individuals had been the subjects of prior applications for surveillance, and the results of the earlier interceptions.

The short answer to defendants' argument, as another court stated in response to a similar argument, "is that the statute does not require what [they] say is lacking." *United States v. Kilgore*, 518 F.2d 496, 500 (5th Cir.1975), *cert. denied*, 430 U.S. 905, 97 S.Ct. 1173, 51 L.Ed.2d 581 (1976). The statute "requires disclosure of only those previous *applications* directed at the persons for whom the subsequent application is made." *United States v. Sklaroff*, 552 F.2d 1156, 1160 (5th Cir.1977) (emphasis in original), *cert. denied sub nom. Leppo v. United States*, 434 U.S. 1009, 98 S.Ct. 718, 54 L.Ed.2d 751 (1978). *See also United States v. Florea*, 541 F.2d 568, 575–76 (6th Cir.1976), *cert. denied*, 430 U.S. 945, 97 S.Ct. 1579, 51 L.Ed.2d 792 (1977). Despite defendants' contention, there is no requirement that the government disclose previous applications directed at individuals who have merely been overheard during ongoing electronic surveillance, but who are not named as targets in the applications for and the orders authorizing surveillance. Defendants do not contend that the government failed to disclose any prior applications concerning those individuals who were actually named in the applications and orders for surveillance at 98 Prince Street and 51 North Margin Street. Furthermore, the statute "does not require disclosure of information about prior *interceptions*, but only of information about prior *applications.*" *United States v. Florea*, 541 F.2d at 576 (emphasis in original). The government thus had no obligation to disclose the results of prior

interceptions in its applications. I conclude that the government did not violate the provisions of 18 U.S.C. § 2518(1)(e). Defendants' motion to suppress on this ground must be denied.

▮ In any event, several courts have concluded, in the aftermath of the Supreme Court's decision in *United States v. Donovan*, 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977), that suppression is an inappropriate remedy for violations of § 2518(1)(e). *See, e.g., United States v. Abramson*, 553 F.2d 1164, 1169–70 (8th Cir.), *cert. denied*, 433 U.S. 911, 97 S.Ct. 2979, 53 L.Ed.2d 1095 (1977); *United States v. Sullivan*, 586 F.Supp. 1314, 1320–23 (D.Mass.1984); *United States v. Harvey*, 560 F.Supp. 1040, 1070–72 (S.D.Fla.1982). In *Donovan*, the Supreme Court reiterated its holding that, under Title III, suppression is required only for a "failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." *United States v. Donovan*, 429 U.S. at 433–34, 97 S.Ct. at 671, *citing United States v. Giordano*, 416 U.S. 505, 527, 94 S.Ct. 1820, 1832, 40 L.Ed.2d 341 (1974). The Court stated that a violation of § 2518(1)(b)(iv), requiring that an application for an intercept order identify those persons the government has probable cause to believe are committing the offense and whose communications are expected to be intercepted, "could hardly invalidate an otherwise lawful judicial authorization." *United States v. Donovan*, 429 U.S. at 435, 97 S.Ct. at 671. Therefore, suppression was not required. A similar analysis is applicable to violations of § 2518(1)(e). As Judge Garrity has explained:

It is difficult to see how suppression could be required for noncompliance with § 2518(1)(e) when it is not required for a violation of § 2518(1)(b)(iv). Disclosure of prior applications naming those individuals who are targets of a new investigation necessarily depends on the naming of the targets in the new application.

If failure to name target Smith in a wiretap application would not require suppression, the failure to disclose prior applications in which Smith was a named interceptee should not require suppression.

*United States v. Sullivan,* 586 F.Supp. at 1323. Defendants have made no more than a conclusional allegation that the government's conduct in allegedly violating § 2518(1)(e) was either intentional or reckless. There is no showing here that the government consciously attempted to keep relevant information from the judges who authorized the interceptions in this case. I therefore conclude that suppression of evidence obtained as a result of electronic surveillance in this case is inappropriate, even if a violation of § 2518(1)(e) has occurred.

### I. *Lack of Particularity*

 Defendants next argue that the applications and orders for electronic surveillance do not describe the types of conversations to be intercepted or the type of conduct to be investigated with sufficient particularity to satisfy the requirements of the statute and the Fourth Amendment. *See Berger v. New York,* 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). Title III requires that an application for an order authorizing electronic surveillance include "a particular description of the type of communications sought to be intercepted," 18 U.S.C. § 2518(1)(b)(iii) (1982), and that an order authorizing such surveillance specify "a particular description of the type of communication sought to be intercepted, and a statement of the particular offense to which it relates." *Id.* § 2518(4)(c). Numerous courts have held that the provisions of the statute satisfy the particularity requirement of the Fourth Amendment as applied to electronic surveillance. *See United States v. Dorfman,* 542 F.Supp. 345, 385 & n. 41 (N.D.Ill.1982) (citing cases), *aff'd sub nom. United States v. Williams,* 737 F.2d 594 (7th Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985).

 This claim is without merit. "Where the alleged offense is set out with sufficient detail and the authorization permits interception of any conversations relating to that offense, the statute and the Constitution are satisfied." *United States v. Dorfman,* 542 F.Supp. at 387. *See also United States v. Tortorello,* 480 F.2d 764, 780 (2d Cir.), *cert. denied,* 414 U.S. 866, 94 S.Ct. 63, 38 L.Ed.2d 86 (1973). The applications and orders in this case were sufficient to satisfy the above standard. For example, the government's initial application to conduct electronic surveillance at 98 Prince Street sought:

> authorization to intercept and record oral communications of GENNARO J. ANGIULO, also known as and hereinafter referred to as JERRY ANGIULO; DONATO ANGIULO, a/k/a DANNY ANGIULO; NICOLO ANGIULO, a/k/a NICK ANGIULO; MICHELE ANGIULO, a/k/a MIKE ANGIULO; FRANCESCO ANGIULO, a/k/a FRANK ANGIULO; JOHN SALEMME, a/k/a JACKIE SALEMME; RICHIE GAMBALE; ILARIO ZANNINO, a/k/a LARRY BAIONE; VINCENT FERRARA; DOMINIC ISABELLA; and others as yet unknown, concerning offenses enumerated in 18 U.S.C. § 2516; that is, offenses involving the conducting of an illegal gambling business in violation of 18 U.S.C. § 1955, the making of extortionate extensions of credit in violation of 18 U.S.C. § 892, the financing of extortionate credit transactions in violation of 18 U.S.C. § 893, conspiracy to commit these offenses in violation of 18 U.S.C. § 371, and the collection of extensions of credit by extortionate means and conspiracy to commit said offenses in violation of 18 U.S.C. § 894.

Judge Garrity's order authorizing electronic surveillance found probable cause to believe that the named individuals were committing the above-named offenses and authorized the interception of oral communications for:

> (a) Information reflecting the precise nature, scope and extent of the loansharking operations, including the making of extortionate extensions of credit,

financing extortionate extensions of credit, collecting extensions of credit by extortionate means, and conspiracy to do the aforesaid;

(b) Information reflecting the precise nature, scope and extent of the illegal gambling business, including its length of continuous operation, its daily gross revenue, and the number of individuals who conduct, finance, manage, supervise, direct, or own all or part of this business;

(c) Information reflecting the identities and roles of all aiders, abettors, co-conspirators, principals and victims of the illegal activity referred to in paragraphs 5(a) and 5(b) above; and

(d) Information reflecting the existence and location of records, the location and source of resources used to finance, and the location and the disposition of proceeds of the illegal activities referred to in paragraphs 5(a) and (b) above.

The other six orders and applications are phrased in a like manner. Similarly worded warrants have been found to meet the particularity requirements. *See, e.g., United States v. Shakur*, 560 F.Supp. 318, 324–25 (S.D.N.Y.1983).

Defendants argue that the type of conversation to be intercepted must be described with as much particularity as required in traditional searches, that the conversations sought to be intercepted must be necessary for the prosecution of the offenses described, and that the offenses must be identified in the order authorizing surveillance by the elements the government must prove.

■ These arguments cannot be sustained. First, conversations are not like physical evidence. They cannot be described with as much precision, nor can an applicant for a surveillance order know of their actual content in advance, since "it is virtually impossible for an applicant to predict exactly what will be said concerning a specific crime." *United States v. Tortorello*, 480 F.2d at 780. Therefore, courts have applied a more flexible, pragmatic approach to the particularity requirement in the context of electronic surveillance. *See,*

*e.g., Scott v. United States*, 436 U.S. 128, 140–42, 98 S.Ct. 1717, 1724–26, 56 L.Ed.2d 168 (1978). "When, as here, a continuing course of criminal conduct is involved, a [surveillance] order must necessarily be framed flexibly enough to permit interception of 'any statements concerning a specified pattern of crime.'" *United States v. Steinberg*, 525 F.2d 1126, 1131 (2d Cir. 1975), *cert. denied*, 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976), *citing United States v. Tortorello*, 480 F.2d at 780. *United States v. Abrams*, 615 F.2d 541 (1st Cir.1980), *United States v. Roche*, 614 F.2d 6 (1st Cir.1980), and *In re Application of Lafayette Academy*, 610 F.2d 1 (1st Cir. 1979), three cases involving search warrants for physical evidence such as documents relied upon by defendants, are therefore inapposite. Furthermore, the First Circuit invalidated search warrants in those cases because they failed to describe the documents to be seized with sufficient particularity. Here, by contrast, the fact that the order limited surveillance to the interception of conversations related to the named offenses satisfied the particularity requirement. *See United States v. Dorfman*, 542 F.Supp. at 387 n. 45.

■ Second, a surveillance order need not list the elements of the statutory offense to which the intercepted conversations must relate in order to satisfy the particularity requirements of Title III. *United States v. Licavoli*, 604 F.2d 613, 620 (9th Cir.1979), *cert. denied*, 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980), cited by defendants, does not in fact impose such a requirement. Rather, *Licavoli* holds simply that § 2518(4)(c) is satisfied when a surveillance order does recite the elements of the statutory offense. As noted above, the particularity requirement is satisfied where, as here, the alleged offense is set out with sufficient detail and the surveillance order permits interception of any conversations relating to that offense, whether or not each element of the offense is listed in the order.

Finally, the fact that the surveillance order authorized the interception of informa-

tion regarding the bettors and borrowers involved in the allegedly illegal activity does not violate the particularity requirement. *See, e.g., United States v. Clerkley,* 556 F.2d 709, 714 (4th Cir.1977), *cert. denied sub nom. London v. United States,* 436 U.S. 930, 98 S.Ct. 2830, 56 L.Ed.2d 775 (1978). I therefore conclude that the applications and orders for surveillance satisfy the particularity requirement of Title III. Defendants' motion to suppress on this ground is denied.

## J. *Duration of Electronic Surveillance*

■ Defendants also argue that suppression of evidence obtained through the interception of conversations at 98 Prince Street and 51 North Margin Street is appropriate because of the duration of electronic surveillance at issue in this case. This claim cannot be sustained. The provisions of Title III themselves provide for extensions of orders authorizing electronic surveillance upon compliance with the statute. An order authorizing electronic surveillance must specify "the period of time during which such interception is authorized, including a statement as to whether or not the interception shall automatically terminate when the described communication has been first obtained." 18 U.S.C. § 2518(4)(e) (1982). A judge may not issue an order authorizing surveillance for any period longer than necessary, nor in any event for longer than thirty days. *Id.* § 2518(5). Extensions of orders authorizing surveillance may be granted, however, upon application by the government and findings by the judge such as necessary for an initial order to issue. Such extensions as well may not last for a period longer than necessary, or in any event for longer than thirty days. *Id.*

There is no question, based on the record before me, that the seven orders authorizing and extending surveillance in this case complied with the above statutory requirements. With the exception of the April 27, 1981 order extending surveillance, which specified a fifteen-day limitation, each order provided for automatic termination of surveillance within thirty days or upon the attainment of the objective of the investigation, whichever came first. Since there is overwhelming authority to the effect that the provisions of Title III satisfy the Fourth Amendment, *see United States v. Dorfman,* 542 F.Supp. at 385 n. 41; *United States v. Mainello,* 345 F.Supp. 863, 873 (E.D.N.Y.1972) ("the duration provisions clearly pass constitutional muster ..."), I conclude that the duration of the surveillance in this case did not violate either the statute or the Constitution. This is especially true in this case, where the government was investigating a broad conspiracy in which numerous persons were supposedly involved in the allegedly illegal gambling and loansharking activities of the Angiulos. *See Scott v. United States,* 436 U.S. 128, 140, 98 S.Ct. 1717, 1724, 56 L.Ed.2d 168 (1978) ("when the investigation is focusing on what is thought to be a widespread conspiracy more extensive surveillance may be justified in an attempt to determine the precise scope of the enterprise"); *United States v. Armocida,* 515 F.2d 29, 38 (3d Cir.), *cert. denied sub nom. Conti v. United States,* 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84 (1975). Defendants' motion to suppress on this ground is denied.

## K. *Unavailability of Other Investigative Techniques*

Defendants next argue that the evidence against them should be suppressed because the government, in its applications for authorization to conduct electronic surveillance, failed to satisfy the requirement of 18 U.S.C. § 2518(1)(c) (1982). That section requires that all applications include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." *Id.* The judge reviewing the application may authorize electronic surveillance if he or she determines, on the basis of the facts submitted, that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed

if tried or to be too dangerous." *Id.* § 2518(3)(c).

 Judges Garrity and Mazzone, in authorizing electronic surveillance in this case, made the above determination. The First Circuit has held that, in reviewing such a determination under § 2518(3)(c), a court's role "is not to make a *de novo* determination of sufficiency as if it were a district judge, but to decide if the facts set forth in the application were minimally adequate to support the determination that was made." *United States v. Southard,* 700 F.2d 1, 28 (1st Cir.), *cert. denied sub nom. Ferris v. United States,* —— U.S. ——, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983); *United States v. Scibelli,* 549 F.2d 222, 226 (1st Cir.), *cert. denied,* 431 U.S. 960, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977). Moreover, the government need not show that it has "exhausted all 'other investigative procedures'" to satisfy the requirement of § 2518(1)(c). *United States v. Scibelli,* 549 F.2d at 226.

 Applying the above standards, I conclude that the statutory requirements with regard to the unavailability of other investigative techniques were satisfied in this case. The affidavits of Agents Quinn and Rafferty, submitted with the various applications for electronic surveillance, clearly set forth facts adequate to support the determination of Judges Garrity and Mazzone.

Agent Quinn, in his original affidavit in support of the application to conduct electronic surveillance at 98 Prince Street, stated in essence as follows: FBI agents had attempted to conduct physical surveillance at 98 Prince Street on numerous occasions but this technique was unlikely to be successful because (a) the presence of individuals unknown in the area usually attracts attention; (b) the Angiulos employ "spotters" to watch for strangers, particular law enforcement personnel, in the neighborhood; (c) the Angiulos and their associates are extremely sensitive to the presence of law enforcement personnel; and (d) the physical layout of Prince Street—a short, narrow one-way street lined by row houses

and apartment buildings—made such observation difficult, especially since the Angiulos owned all the property in the immediate vicinity and efforts to lease an apartment from which to observe the entrance to 98 Prince Street had been unsuccessful for the previous two years. Video surveillance of the front and rear entrance of 98 Prince Street had been attempted, but failed when the cameras were discovered. Numerous efforts to monitor transmissions by the Angiulos and their associates on citizen band radios failed, because the individuals communicated using short, coded messages. The execution of search warrants was unlikely to result in the gathering of evidence sufficient to establish violations of gambling and loansharking laws. Confidential informants have indicated that they are unwilling to testify for fear of reprisals. Interviewing those who placed bets would not be helpful, because such persons, in addition to being fearful, have a very limited knowledge of those involved in the allegedly illegal operations. Experience has established that immunizing potential witnesses would lead only to contempt and/or perjury. Use of undercover techniques would not work because of the close and long-standing relationship among those involved in the allegedly illegal activity. Each application for extension of surveillance at 98 Prince Street incorporated Quinn's initial affidavit and also described the continued unavailability of other investigative techniques.

Agent Rafferty, in his original affidavit in support of the application to conduct electronic surveillance at 51 North Margin Street, stated that video surveillance of the entrance of the building had provided detailed information regarding the participants in the allegedly illegal card games, but such surveillance would not produce evidence sufficient to establish violations of gambling and loansharking laws. Search warrants would also likely fail to produce sufficient evidence, especially since the two individuals who stood guard at 51 North Margin Street would probably be able to notify those inside, who could destroy phys-

ical evidence before the search could be effectuated. The affidavit gives reasons similar to those of the Quinn affidavit for the inability to use witnesses, undercover infiltration or immunity as investigative techniques. The applications for the extension of surveillance at 51 North Margin Street incorporated this information and continued to describe the unavailability of other investigative techniques.

I conclude that the facts found in the above affidavits constitute a satisfactory explanation of why other investigative techniques would not be likely to succeed, and the government thereby has complied with the requirement of 18 U.S.C. § 2518(1)(c). The First Circuit has upheld surveillance orders in which the government's applications contained similar or less detail. *See, e.g., United States v. Southard,* 700 F.2d at 28; *United States v. Almonte,* 594 F.2d 261, 264 (1st Cir.1979); *United States v. Gerardi,* 586 F.2d 896, 897–98 (1st Cir.1978); *United States v. Santarpio,* 560 F.2d 448, 452 (1st Cir.), *cert. denied sub nom. Schepici v. United States,* 434 U.S. 984, 98 S.Ct. 609, 54 L.Ed.2d 478 (1977); *United States v. Scibelli,* 549 F.2d at 227–28; *United States v. DiMuro,* 540 F.2d 503, 510–11 (1st Cir. 1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977).

Defendants argue, based on *United States v. Santora,* 600 F.2d 1317 (9th Cir. 1979), that the government failed to satisfy the requirements of § 2518(1)(c) as to individuals who were not named as targets of the original interceptions and as to offenses which were not the subject of the initial interceptions. This argument cannot be sustained. In *Santora,* the government obtained an order authorizing a tap on certain telephone lines. It then applied for an order authorizing a tap on the telephones of other persons whose conversations had been overheard on the original tap. In its second application, however, the government relied almost exclusively on statements in its initial application to the effect that normal investigative techniques had failed. The Ninth Circuit held that this second application violated § 2518(1)(c), be-cause there was no independent analysis of the utility of conventional investigative techniques as to those individuals whose phones were tapped pursuant to the second application. *Id.* at 1321–22. It is clear, however, that *Santora* "does not stand for the proposition that a fresh showing is required each time the Government wishes to monitor the conversation of a new suspect or set of suspects, as the defendants claim." *United States v. Tufaro,* 593 F.Supp. 476, 490 (S.D.N.Y.1983). *Santora* as well "does not apply to extensions of existing taps." *United States v. Van Horn,* 579 F.Supp. 804, 812 n. 5 (D.Neb. 1984). *Santora* thus does not apply to the facts of this case, which involves the over-hearing of additional suspects at locations where electronic surveillance was extended. Furthermore, it is clear from the affidavits of Agents Quinn and Rafferty that the showing of unavailability of other investigative techniques was directed to the entire range of defendants' criminal activity and not alone to any specific crime. Defendants' motion to suppress on this ground must be denied.

L. *Amendment of the Hours of Surveillance at 51 North Margin Street*

 Defendants' final argument for suppression of evidence obtained through electronic surveillance applies only to the interceptions at 51 North Margin Street. They assert that communications intercepted at that location after 7:00 a.m. on Tuesdays and Fridays between March 27, 1981 and April 26, 1981 should be suppressed because the government improperly moved to amend the order authorizing surveillance.

On March 27, 1981, the government sought and obtained an order authorizing electronic surveillance at 51 North Margin Street. The order specified that communications could be intercepted twice per week from 12 noon until 7:00 a.m. the following morning. On April 6, 1981, the government moved to amend the order of March 27, 1981 to allow for the interception of conversations until 7:00 a.m. each Tuesday

and Friday or until the FBI agent conducting the surveillance determined that all the targeted individuals named in the order had left 51 North Margin Street for the day. In support of the motion, Agent Rafferty stated in an affidavit that he believed, based on his review of conversations intercepted on April 2 and 3, that conversations of a criminal nature "could be occurring" after 7:00 a.m. on Tuesdays and Fridays. The court granted the motion to amend.

Defendants argue that suppression is appropriate because the government, in its motion and supporting affidavit, failed to allege or establish probable cause that conversations authorized to be intercepted under the order of March 27, 1981 would in fact occur after 7:00 a.m. They argue as well that amendment of the March 27th order could not be authorized absent the specific judicial determinations found in 18 U.S.C. § 2518 (1982).

Defendants' argument cannot be sustained. First, as noted in Section I.A., *supra,* only defendant Cincotti among the six defendants before me has standing to challenge the interceptions at 51 North Margin Street. In any event, defendants have cited no authority for the proposition that a mere extension of the hours of surveillance requires a showing of probable cause or the judicial determinations enumerated in the statute. Neither the express provisions of Title III nor cases interpreting the statute require that an order authorizing surveillance limit such surveillance to particular hours. Whether any such limitation is inserted in a surveillance order "is a matter of discretion for the Court." Carr, *The Law of Electronic Surveillance* § 4.07[5][a][ii], at 202 (1977). Based on the record before me and the information contained in Agent Rafferty's affidavit, I cannot say the authorizing judge abused his discretion in granting the government's motion to amend. Defendants' motion to suppress on this ground is denied.

## II. *Non-Title III Motions*

Defendants have made numerous motions which do not relate to the electronic surveillance in this case. Each will be considered in turn.

### A. *Motion to Strike Surplusage*

Defendants have moved, pursuant to Rule 7(d) of the Federal Rules of Criminal Procedure, to strike as surplusage language from Counts 1 and 2 of the indictment describing the purpose of the alleged criminal enterprise. They argue that the following language is prejudicial, inflammatory, and irrelevant to any issue in the case:

#### *Purposes of the Enterprise*

4. It was part of the conspiracy that the Enterprise had the following purposes:

(a) To control, supervise, finance, participate in and set policy concerning the making of money by illegal means, including the operation of illegal gambling and loansharking businesses and the collection of unlawful debts;

(b) To enforce the rules and regulations and the laws of the Enterprise, to obstruct justice, to protect members and associates from investigation and prosecution, and to commit crimes including murder at the request of other Families of La Cosa Nostra;

(c) To perpetuate the Enterprise by selecting new leaders for the Enterprise and by "making" or "baptizing," *i.e.,* inducting, new members from the ranks of associates after the associates had undergone an apprenticeship in crime and received instruction as to the laws and protocol which governed the Enterprise;

(d) To be aware of the laws governing the criminal activities of the Enterprise, to monitor the activities of law enforcement personnel and to endeavor corruptly to obtain information concerning and to affect the course of criminal investigations and proceedings concerning members and associates.

A motion to strike surplusage is granted only if the allegations are inflammatory, prejudicial, and irrelevant to the

crime charged, as defendants claim in this case. *See, e.g., United States v. Ramirez,* 710 F.2d 535, 544–45 (9th Cir.1983); *United States v. DePalma,* 461 F.Supp. 778, 797 (S.D.N.Y.1978). Courts and commentators have noted that the above standard is rather exacting, and alleged surplusage therefore is rarely stricken. *See, e.g., United States v. DePalma,* 461 F.Supp. at 797; 1 C. Wright, *Federal Practice & Procedure: Criminal* § 127, at 426–27 (2d ed. 1982).

■ Defendants are charged in the first two counts of the indictment with violating the RICO statute. The Supreme Court has stated that the government must prove the existence of an "enterprise" in order to secure a conviction under RICO. The Court has explained that an enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct," that an enterprise "is an entity separate and apart from the pattern of activity in which it engages," that proof of a pattern of racketeering activity does not necessarily establish proof of an enterprise, and that the existence of an enterprise may be "proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981). *See also United States v. Bledsoe,* 674 F.2d 647, 665 (8th Cir.) (proof of the existence of an enterprise requires a showing of a distinct, ascertainable structure which "might be demonstrated by proof that a group ... has an organizational pattern or system of authority beyond what was necessary to perpetrate the predicate crimes. The command system of a Mafia family is an example of this type of structure ..."), *cert. denied sub nom. Phillips v. United States,* 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982). Given the requirements for proof of an enterprise described by the Supreme Court in *Turkette,* I cannot say that the language defendants wish to strike as surplusage is irrelevant to the crime charged. And as one district court has noted:

The determinative question in a motion to strike surplusage is not the potential prejudice, but rather the relevance of the allegation to the crime charged in the indictment. If the evidence of the allegation is admissible and relevant to the charge, then despite prejudice, the language will not be stricken.

*United States v. Napolitano,* 552 F.Supp. 465, 480 (S.D.N.Y.1982), *aff'd sub nom. United States v. Ruggiero,* 726 F.2d 913 (2d Cir.), *cert. denied sub nom. Rabito v. United States,* —— U.S. ——, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984); *see also United States v. DePalma,* 461 F.Supp. at 797 n. 26. Defendants' motion is therefore denied.

B. *Motion to Suppress Evidence of Voice Identification*

■ Defendants have moved to suppress any identification of the voice of any defendant by law enforcement officials made during or after the interception of defendants' conversations through electronic surveillance, as well as any voice identification of defendants at trial. They argue that the voice identifications were not made on the basis of personal knowledge of the witnesses, that the purported transcripts of the intercepted conversations are filled with improper identifications and that the identifications were made through an unduly suggestive procedure in that they were the product of a joint endeavor of law enforcement officials.

■ Defendants' motion must be denied. It is presented as a motion in limine, seeking a sweeping exclusion of all voice identification. It is true that in some circumstances, identification of the voices on tape recordings made through electronic surveillance is a condition precedent to the admissibility of the recordings. But, under Rule 901(b)(5) of the Federal Rules of Evidence, such identification may be "based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." A voice identification thus may be based upon hearing the voice at any time, either before or after the interceptions in this case. *United States v.*

*DiMuro,* 540 F.2d 503, 514 (1st Cir.1976), *cert. denied,* 439 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977). Defendants have failed to allege any facts which would show that the procedures for identifying the voices on the tapes were unduly suggestive and would lead to a "very substantial likelihood of irreparable misidentification." *Manson v. Brathwaite,* 432 U.S. 98, 116, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977), *quoting Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). Once a threshold of foundation evidence is presented, the reliability of a voice identification by law enforcement personnel goes merely to the weight to be given such testimony, not to its admissibility. *See, e.g., United States v. Axselle,* 604 F.2d 1330, 1338 (10th Cir.1979); *United States v. Armedo-Sarmiento,* 545 F.2d 785, 792 (2d Cir.1976), *cert. denied,* 430 U.S. 917, 97 S.Ct. 1330, 51 L.Ed.2d 595 (1977); *United States v. Rizzo,* 492 F.2d 443, 448 (2d Cir.), *cert. denied,* 417 U.S. 944, 94 S.Ct. 3069, 41 L.Ed. 665 (1974).

### C. *Motion to Prohibit Improper References and Terminology*

Defendants have moved the court to prevent the government, without express prior approval, from making references to organized crime, the Mafia, La Cosa Nostra, the Mob, made member, the Family, "or any other term popularly used to designate a concept of a supposed structure or hierarchy of combined criminal activity." Motion to Prohibit Improper References and Terminology at 2 (January 18, 1985). Defendants have also moved to prevent the government, without proper approval, from referring to them "or any other party or witness or subject of testimony by a name other than the formal proper name of such person," and from referring "to any facts or opinions of the Defendants' characters, backgrounds or reputations, or to the character, background or reputation of any person with whom the Defendants or any one of them may be allegedly associated." *Id.*

■ Defendants are making a blanket motion covering all potential references described above. It is denied. First, as noted in Section II.A., *supra,* the government is required to prove the existence of an enterprise in order to secure convictions under the RICO statute. In a RICO prosecution, a charge may be made that several persons are associated with each other as a Mafia family and constitute an enterprise. *See, e.g., United States v. Ruggiero,* 726 F.2d 913, 915 (2d Cir.), *cert. denied sub nom. Rabito v. United States,* — U.S. —, 105 S.Ct. 118, 83 S.Ct. 60 (1984); *United States v. Brooklier,* 685 F.2d 1208, 1213 (9th Cir.1982), *cert. denied,* 459 U.S. 1206, 103 S.Ct. 1194, 75 L.Ed.2d 439 (1983). The government is entitled to describe and prove the existence of the enterprise alleged in the indictment, as well as the role of the defendants in that enterprise. In so doing, they cannot be completely barred from making reference to the terms of which defendants complain. As one district court has explained:

> The references in the indictment to "the Bonanno Family of La Cosa Nostra" serve to identify the "enterprise" and the means by which its members and associates conduct various criminal activities. The government is entitled to prove that "the Bonanno Family of La Cosa Nostra," the enterprise it has described, exists and that the defendants are associated with it.

*United States v. Napolitano,* 552 F.Supp. 465, 480 (S.D.N.Y.1982), *aff'd sub nom. United States v. Ruggiero,* 726 F.2d 913 (2d Cir.) *cert. denied sub nom. Rabito v. United States,* — U.S. —, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984).

■ Second, defendants Gambale, Limone, and Orlandella are charged in Counts 10–13 with violations of the Extortionate Credit Transactions Act, 18 U.S.C. §§ 891–894 (1982). These statutes expressly provide for the admissibility, under certain circumstances, of the reputation of a defendant with regard to credit collection practices. *See id.* §§ 892(b)(3)(B) and (c); 894(b), (c).

■ Finally, this court does not and cannot properly make a general ruling on

abstract questions of the admissibility of types of statements or evidence. All counsel will have the opportunity at trial to make objections to the admissibility of any references described in defendants' motions that might be subject to exclusion as outside the range of permissible references and terminology. At that time, the court can weigh concretely, in the context of the trial, the potential prejudice from and probative weight of a particular reference or term to which objection is then made. The court cannot rule in advance on such evidentiary questions. Nor is it appropriate to enter a sweeping order requiring government counsel to seek prior approval before making any of the above references, although in particular instances the court will be receptive to such a course of conduct as desirable if counsel believe they are faced with close evidentiary questions as to whether prejudice may arise. For all the above reasons, defendants' motion is denied.

D. *Motion to Dismiss for Defective Statement of Conspiracy*

Defendants have moved to dismiss Count 1 of the indictment, which charges the defendants with conspiracy to violate the RICO statute, in violation of 18 U.S.C. § 1962(d) (1982). Defendants argue that the allegations in Count 1 are vague, that Count 1 fails to state the manner and means by which the alleged conspirators would use their position in the RICO enterprise, and that Count 1 fails to allege an agreement to participate, participation, or awareness by the participants of the acts allegedly performed in furtherance of the conspiracy.

This motion must be denied. The First Circuit has held that "a RICO conspiracy count must charge as a minimum that each defendant agreed to commit two or more specified predicate crimes in addition to charging an agreement to participate in the conduct of an 'enterprise's' affairs through a 'pattern of racketeering activity.'" *United States v. Winter*, 663 F.2d 1120, 1136 (1st Cir.1981), *cert. denied*, 460 U.S.

1011, 103 S.Ct. 1249, 75 L.Ed.2d 479 (1983). The court has also rejected a defendant's contention that a RICO conspiracy indictment "did not allege that he knew that there was a diverse criminal enterprise or that he intended to associate himself with it and was, therefore, legally insufficient." *United States v. Turkette*, 656 F.2d 5, 8 (1st Cir.1981). Instead, the First Circuit held the indictment legally sufficient where it alleged that all named defendants were associated as an "enterprise" for specified illegal purposes, that defendants conspired to violate 18 U.S.C. § 1962(c), that defendants would engage in a pattern of racketeering activity affecting interstate commerce as part of the conspiracy, and that defendants committed two or more predicate acts as part of the conspiracy. *Id.*

The RICO conspiracy indictment in this case clearly satisfies the requirements set out in *Winter* and *Turkette*. The first paragraph describes the enterprise as a group of individuals associated in fact which engaged in various criminal activities. The second paragraph charges that the defendants, being employed by and associated with the enterprise, conspired to participate in the affairs of the enterprise through a pattern of racketeering activity and the collection of unlawful debt. Additional paragraphs describe the structure and purpose of the enterprise, defendants' role in the enterprise, and the acts of racketeering committed by each defendant through which he participated in the affairs of the enterprise. Count 1 thus satisfies the pleading requirements for a RICO conspiracy. Defendants' motion is denied.

E. *Motion to Dismiss Indictment or, in the Alternative, to Compel An Election*

Defendants have moved the court to dismiss the indictment in whole or in part or to compel the government to prosecute only certain counts in the indictment. They argue, first, that the crimes charged in Counts 3–13 of the indictment allege the same conduct charged as predicate acts in the two RICO counts, Counts 1 and 2.

They assert that the predicate crimes are lesser included offenses under RICO and their inclusion in separate counts renders the indictment multiplicitous. Second, they argue that Counts 1 and 2, which charge a RICO conspiracy, are duplicitous, in that they each charge more than one offense in one count, and cannot be charged separately, in that they merge under Wharton's Rule.

■ Defendants' arguments are unsupported, both in the statute and in case law. Defendants first argue, based on *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), that Counts 3 through 13 are the same offenses as the RICO counts because they do not require proof of a fact which the RICO offenses do not. *Id.* at 304, 52 S.Ct. at 182. Such an argument cannot be sustained. The Supreme Court has recently explained that the test in *Blockburger* is merely a "means of discerning congressional purpose" and does not control where "there is a clear indication of contrary legislative intent." *Albernaz v. United States*, 450 U.S. 333, 340, 101 S.Ct. 1137, 1142, 67 L.Ed.2d 275 (1981). As numerous courts have held, it is clear that Congress intended to permit separate convictions for violations both of RICO and the predicate offenses. *See, e.g., United States v. Sutton*, 700 F.2d 1078, 1080–81 (6th Cir.1983); *United States v. Greenleaf*, 692 F.2d 182, 189 (1st Cir.1982), *cert. denied*, 460 U.S. 1069, 103 S.Ct. 1523, 75 L.Ed.2d 946 (1983); *United States v. Hawkins*, 658 F.2d 279, 287–88 (5th Cir. 1981). Congress in fact stated that a purpose of RICO was to eradicate organized crime by "establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime." Organized Crime Control Act of 1970, Statement of Findings and Purpose, 84 Stat. 922–23, *reprinted in* [1970] U.S. Code Cong. & Admin.News, p. 1073. I thus conclude that "[t]he Government is not required to make an election between seeking a conviction under RICO, or prosecuting the predicate offenses only. Such a requirement would nullify the intent and effect of the RICO prohibitions." *United States v. Rone*, 598 F.2d 564, 571 (9th Cir.1979), *cert. denied sub nom. Little v. United States*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980).

■ Defendants' other arguments are unsupported as well. It is clear that Counts 1 and 2 are not duplicitous for they do not in fact charge more than one offense in one count. Rather, the RICO statute itself creates substantive federal criminal offenses, making it unlawful to participate in the affairs of an enterprise through a pattern of racketeering activity and to conspire to violate the criminal provisions of the statute. 18 U.S.C. §§ 1962(c), (d) (1982). Defendants thus could properly be charged in separate courts with violations of § 1962(c) and § 1962(d). Furthermore, Wharton's Rule would not operate to require the merger of these two counts. Wharton's Rule states that an agreement between two people to commit a particular crime cannot be prosecuted as a conspiracy where the crime necessarily requires the participation of two persons for its commission. *Ianelli v. United States*, 420 U.S. 770, 773, 95 S.Ct. 1284, 1287, 43 L.Ed.2d 616 (1975). It is an exception to the general rule that a conspiracy and the substantive offense that is its goal do not merge. *Id.* at 781–82, 95 S.Ct. at 1291–92. The First Circuit has stated that "the Rule is a judicial presumption, serving only as an indication of legislative intent. It is subject to rebuttal by contrary indications." *United States v. Previte*, 648 F.2d 73, 77 (1st Cir.1981). *See also Ianelli v. United States*, 420 U.S. at 782, 95 S.Ct. at 1292. There is substantial evidence in the RICO statute itself, namely the inclusion of § 1962(d) making it unlawful for a person to conspire to violate § 1962(c), to suggest that Congress intended to maintain conspiracy to violate RICO and the substantive offense of racketeering as separate offenses. *United States v. Rone*, 598 F.2d at 570; *United States v. Ohlson*, 552 F.2d 1347, 1349 (9th Cir.1977). In any event, the Supreme Court has stated that "[w]e do not consider initial dismissal of

the conspiracy charge to be required in such a case." *Ianelli v. United States,* 420 U.S. at 786 n. 18, 95 S.Ct. at 1294 n. 18. The First Circuit has held that Wharton's Rule "does not forbid charging both a conspiracy and the substantive offenses, even when it applies." *United States v. Previte,* 648 F.2d at 77. Defendants' motion to dismiss, or in the alternative to compel an election, is therefore denied.

F. *Motion to Dismiss for Misleading and Inaccurate Evidence Before the Indicting Grand Jury*

■ Defendants have moved to dismiss the indictment on the ground that misleading and inaccurate evidence was presented to the indicting grand jury. They assert that the grand jury findings were based primarily on the tape recordings made through electronic surveillance, that these recordings were significantly and substantially inaudible and unintelligible, and that any transcripts of the tape recorded conversations given to the grand jury were inaccurate.

This motion is denied. A defendant may not challenge an indictment valid on its face on the ground that the grand jury acted on the basis of inadequate or incompetent evidence. *United States v. Calandra,* 414 U.S. 338, 345, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974). Defendants' citations to cases involving prosecutorial misconduct are inapposite. They have made no more than conclusional allegations regarding any improper actions before the grand jury and their motion thus has no basis.

G. *Motion to Strike Certain Predicate Acts and All References Thereto Regarding Conspiracy to Murder*

■ Defendants have moved, pursuant to Rules 7(d) and 12(b)(2) of the Federal Rules of Criminal Procedure, to strike all references in the indictment to conspiracy to murder with which several defendants are charged as predicate acts of racketeering activity. They assert that conspiracy to murder does not fall within the definition of racketeering activity under the stat-

ute and thus all references to conspiracy to murder are irrelevant and prejudicial.

The statute defines racketeering activity to include "any act or threat involving murder ... which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(A) (1982). Defendants argue that because original versions of the bill that ultimately became RICO included conspiracy as a predicate act, while the final bill did not, the above statutory language cannot be interpreted to include conspiracy to murder as a predicate act. Both the Second Circuit and the Ninth Circuit have rejected this argument. *United States v. Ruggiero,* 726 F.2d 913, 918–19 (2d Cir.), *cert. denied sub nom. Rabito v. United States,* — U.S. —, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984); *United States v. Licavoli,* 725 F.2d 1040, 1044–45 (6th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 3535, 82 S.Ct. 840 (1984). *See also United States v. Welch,* 656 F.2d 1039, 1063 n. 32 (5th Cir. 1981), *cert. denied,* 456 U.S. 915, 102 S.Ct. 1767, 72 L.Ed.2d 173 (1982). I conclude that conspiracy to commit murder may be a predicate act under § 1961(1)(A) for a RICO charge. First, conspiracy to murder on its face fits within the statutory definition for "[c]onspiracy is 'an act ... involving murder.'" *United States v. Licavoli,* 725 F.2d at 1044. Second, Congress stressed in passing the RICO statute that its provisions "should be liberally construed to effectuate its remedial purposes." Pub.L. No. 91–452, § 904(a), 84 Stat. 947. Defendants' motion is therefore denied.

H. *Motion to Dismiss and Strike Enumerated Predicate Acts of Racketeering*

Defendants have also moved to strike certain other predicate acts of racketeering. They argue, first, that the four racketeering acts in the indictment related to illegal gambling can constitute only a single illegal gambling business. They next assert that the various violations of the Extortionate Credit Transactions Act, 18 U.S.C. §§ 892, 894 (1982), charged as predi-

cate acts are in fact independent activities of the named defendants having no relationship with the alleged enterprise. Finally, defendants argue that the two predicate acts of obstruction of justice charged in the indictment are in fact a division of one single criminal episode and cannot be charged separately.

■ Whether one or several gambling businesses exist is a matter of proof. *United States v. DiMuro*, 540 F.2d 503, 508 & n. 5 (1st Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977). The indictment and bill of particulars filed in this case indicate that the government will attempt to prove at trial that different defendants were involved in four different illegal gambling operations, each conducted in violation of 18 U.S.C. § 1955 (1982), which were run in different places, at different times, and involved different persons and types of gambling activities. The government should be permitted to present such proof. The fact that defendants are all charged as part of one RICO enterprise does not cause four allegedly separate and illegal gambling businesses to merge into one unified business. As the Supreme Court has explained, an enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct," while a "pattern of racketeering activity" involves "a series of criminal acts." *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981). Thus the government may prove that participants in one enterprise committed various different acts of racketeering, including separate violations of 18 U.S.C. § 1955 (1982).

*United States v. Robinson*, 588 F.2d 1041, 1042–44 (5th Cir.1979), does not change the above result. The Fifth Circuit stated in *Robinson* that an individual could conduct more than one gambling business as part of a larger operation and that no double jeopardy problem would arise from separate convictions for each of the businesses. The court explained that "the determination of whether one or two offenses have taken place for double jeopardy purposes must rest upon the peculiar facts of each case." *Id.* at 1043. The government must be allowed to prove facts showing the existence of four separate gambling operations.

■ Defendants next argue that the alleged violations of 18 U.S.C. §§ 892 and 894 (1982) have no reasonable nexus to the affairs of the enterprise charged in the indictment. This assertion is without merit. The Second Circuit has stated that

one conducts the activities of an enterprise through a pattern of racketeering when (1) one is enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise, or (2) the predicate offenses are related to activities of that enterprise.

*United States v. Scotto*, 641 F.2d 47, 54 (2d Cir.1980), *cert. denied*, 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981). The indictment here alleges that the defendants participated in the affairs of the enterprise through the extortionate credit transactions. Such an allegation, which must be proved at trial, provides a sufficient nexus between the enterprise and the predicate acts involving extortionate credit so as to survive defendants' motion. *United States v. Cryan*, 490 F.Supp. 1234 (D.N.J.), *aff'd without opinion*, 636 F.2d 1211 (3d Cir. 1980), cited by defendants, is inapposite. I cannot conclude, as the judge did in *Cryan*, that no reasonable juror could conclude that the transactions at issue were part of the enterprise in which all defendants were charged. *See id.* at 1244. Furthermore, the alleged enterprise in *Cryan* was an otherwise legitimate one, unlike the wholly illegitimate enterprise charged in this case. *See United States v. Clemente*, 494 F.Supp. 1310, 1324 (S.D.N.Y.1980), *aff'd*, 640 F.2d 1069 (2d Cir.), *cert. denied*, 454 U.S. 820, 102 S.Ct. 102, 70 L.Ed.2d 91 (1981).

■ Finally, defendants' argument that the two predicate acts of obstruction of justice in the indictment could not be charged separately because they are part

of a single criminal episode cannot be sustained. The government must be given the opportunity to prove that two separate violations of 18 U.S.C. § 1503 occurred. "[T]he fact that there is but one objective underlying the separate acts does not diminish the applicability of RICO to those acts." *United States v. Starnes,* 644 F.2d 673, 678 (7th Cir.), *cert. denied,* 454 U.S. 826, 102 S.Ct. 116, 70 L.Ed.2d 101 (1981). *See also United States v. Phillips,* 664 F.2d 971, 1039 (5th Cir.1981) ("a transaction standard ... is inappropriate for determining whether there occurred the requisite number of predicate acts"), *cert. denied sub nom. Myers v. United States,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982); *United States v. Colacurcio,* 659 F.2d 684, 688 n. 4 (5th Cir.1981) ("We consider each of the bribes in this case to be a separate offense."), *cert. denied,* 455 U.S. 1002, 102 S.Ct. 1635, 71 L.Ed.2d 869 (1982). Defendants' motion is denied.

### I. *Motion to Dismiss for Pre-Indictment Delay*

■ Defendants have moved to dismiss the indictment on the ground that the government delayed in obtaining it, thereby violating their Fifth and Sixth Amendment rights. They argue that the government had the evidence necessary to obtain the indictment in its possession as early as May 1981, but did not actually obtain the indictment until September 14, 1984.

■ The Supreme Court has held that pre-indictment delay is "wholly irrelevant" to any violation of the Sixth Amendment. *United States v. Lovasco,* 431 U.S. 783, 788, 97 S.Ct. 2044, 2047, 52 L.Ed.2d 752 (1977); *United States v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971). The Court has also stated that in order to establish that pre-indictment delay has risen to a level of denial of due process, a defendant must show that he or she has suffered "actual prejudice" from the delay and that the actions of the government violate "fundamental conceptions of justice which lie at the base of our civil and political institutions and which de-fine the community's sense of fair play and decency." *United States v. Lovasco,* 431 U.S. at 789–90, 97 S.Ct. at 2048 (citations omitted). Defendants have made no such showing here. Their allegation that they have suffered actual prejudice is purely speculative. *See United States v. Moran,* 759 F.2d 777, 782 (9th Cir.1985) ("the proof must be definite and not speculative ..." ). The newspaper articles they have submitted in support of the motion do not establish that they have suffered actual prejudice, rather than merely having their actions discussed by the media. They have also made no showing that the government's delay was for purposes of tactical advantage or harassment. *See United States v. Marion,* 404 U.S. at 324, 92 S.Ct. at 465; *United States v. Capone,* 683 F.2d 582, 589 (1st Cir.1982); *United States v. Ciampaglia,* 628 F.2d 632, 639 (1st Cir.), *cert. denied,* 449 U.S. 956, 101 S.Ct. 365, 66 L.Ed.2d 221 (1980). Defendants' motion to dismiss is therefore denied.

### J. *Motion to Dismiss or, in the Alternative, to Grant a Post-Indictment Preliminary Hearing*

■ Defendants have moved the court to dismiss the indictment or to grant them a post-indictment preliminary hearing. They argue that the equal protection and due process clauses of the Constitution mandate such an action where the government has proceeded by indictment rather than preliminary hearing, unguided by any objective standards. Federal law specifically gives the prosecutor the right to choose which of these procedures to use. 18 U.S.C. § 3060 (1982). Defendants have made no claim or showing that the government used impermissible standards or criteria in choosing to proceed by indictment. *See United States v. Cox,* 752 F.2d 741, 747 (1st Cir.1985). I therefore deny defendants' motion.

### K. *Motion for Reconsideration*

■ Defendant Limone has moved for reconsideration of the magistrate's ruling of December 24, 1984 granting the govern-

ment's motion to amend the indictment to change all references from James Peter Limone, Jr. to Peter James Limone. Such reconsideration is proper only "where it has been shown that the magistrate's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A) (1982).

Limone argues that two persons, a "James Limone" and a "Peter Limone," were both under investigation for their association with the RICO enterprise in the indictment in this case. Therefore, he argues, the grand jury may have intended to indict the person named "James Limone" and not him. He adds that the existence of a real person named "James Limone" makes the misnomer cases cited by the government in support of its motion inapposite.

A review of the FBI reports submitted by defendant indicates that a "James Limone" was associated with the gambling operations of the enterprise. Defendant Limone was not indicted for any gambling violations, however. He was charged with predicate acts of conspiracy to murder, extortion, and obstruction of justice. Moreover, the indictment did name a "James Salvatore Limone" as an unindicted co-conspirator in the RICO conspiracy count, involved in one of the allegedly illegal gambling operations. *See* Indictment, Count 1, Paragraph 5, b–3, at 7. It thus seems clear that the references in the indictment to "James Peter Limone, Jr." could not have meant to refer to the same individual as "James Salvatore Limone." I therefore cannot say that the magistrate's ruling "is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A) (1982). Defendant Limone's motion is denied.

L. *Motion in Limine to Exclude Use of Tape Recorded Conversations and Transcripts*

Defendants have also moved the court to bar the government from using as evidence in trial the tape recordings made through electronic surveillance at 98 Prince Street and 51 North Margin Street, and any transcripts of those recordings, on the grounds

that the recordings are inaudible and unintelligible and the transcripts are speculative and inaccurate. Ruling will be deferred on questions relating to the audibility of the tape recordings until some time just before or during trial, at which point, if the need then exists, the court can listen to the tapes and make appropriate rulings.

### ORDER

For the foregoing reasons, it is ORDERED:

Ruling is deferred until a time at or immediately before trial on defendants' motion in limine to exclude the use of tape recorded conversations and transcripts.

Each and every other motion of defendants discussed in the above memorandum is denied.